### Daniel Buck and Others *v.* Reuben Squiers.

Under the Revised Statutes of this state, if no administrator be appointed upon the estate of a deceased person, his heirs may maintain ejectment, to recover land to which he had title, without an order of distribution being made by the probate court.

The question, whether, in a conveyance of land abutting upon a highway, the highway does or does not pass to the grantee, is in all cases a matter of construction and intention merely, to be determined from a consideration of the language used by the parties and such surrounding circumstances, as are proper to be considered in ascertaining their intent ; but the presumption, in such cases, is, that the parties did intend to include the highway, and the burden of proof is upon the party, who assumes to show, that they intended the contrary.

Land was conveyed by deed, by this description,—" Beginning at the intersection of the road from Chelsea to Allen's saw mill and the branch on which the saw mill stands on the northerly side of said branch and nearly opposite my now dwelling house; thence on the easterly side of said road until the said road strikes the bank of said branch; thence down said branch, in the middle of the channel, to the first mentioned bounds." And it was held, that the point of commencement was at the intersection of the northerly bank of the stream with the eastern side, or edge, of the road, and that no land lying south of that point, and no part of the highway, was intended to be conveyed by the deed.   Redfield, J., dissenting.

Ejectment for land in Chelsea.   The suit was brought in the name of the heirs of D. Azro A. Buck, as plaintiffs, for the benefit of Sereno Allen, to whom the plaintiffs conveyed the demanded

premises by deeds dated September 7, 1847, and November 11, 1847, the defendant being in possession of the premises at the time, claiming adversely to the plaintiffs. Plea, the general issue, and trial by jury, December Term, 1848,—REDFIELD, J., presiding.

The plaintiffs proved, that the land in dispute had formerly, for more than fifteen years, been in the possession of the plaintiffs' ancestor, he claiming to hold the land in his own right, and that the plaintiffs were his heirs, and that the defendant was in possession of the premises at the date of the service of the plaintiffs' writ. The plaintiffs, in proving their title as heirs of D. Azro A. Buck, proved, that he died, in the year 1840, in the city of Washington, and that the plaintiffs were his sole surviving heirs, and that there had never been any administration upon his estate in this state. It was admitted, that there had been no division or distribution of the estate among the heirs, by the probate court. The defendant insisted, that the plaintiffs could not maintain this action, without showing such division and distribution; but the court overruled the objection.

The defendant gave in evidence a deed from D. Azro A. Buck to Daniel Wyman, dated September 10, 1813, describing a piece of land in Chelsea by the name of the " hop yard," and also by metes and bounds, as follows,—" Beginning at the intersection of the road from Chelsea to Allen's saw mill and the branch on which the saw mill stands on the northerly side of said branch and nearly opposite my now dwelling house; thence on the easterly side of said road until the said road strikes the bank of said branch; thence down said branch, in the middle of the channel, to the first mentioned bounds." The defendant also gave in evidence deeds of the same land, through many intermediate persons, to himself, and proved, that, as the road and the branch now run, all the land in· dispute was conveyed by the deeds to the defendant. The defendant also gave evidence tending to prove, that the premises called the " hop yard," from a time soon after the conveyance to Wyman until the commencement of this suit, had been inclosed and occupied by the several persons to whom they had been conveyed; but that the point of land in dispute, lying in the angle of intersection between the road and the branch, at the southerly point of the same, had been for many years low and marshy and mostly unfit for use, but had been used, when sufficiently dry for that purpose, by the proprietors

of the adjoining portion of the "hop yard," for the purpose of piling wood, and for other convenient uses, from time to time, until it became more dry, when the defendant erected a shop thereon; that formerly the road was travelled nearer the land in dispute, but that lately, in consequence of the bridge being placed lower down the stream, the travel had inclined more to the westerly side of the road, —but that the fence upon the west side of the road had remained where it now is for more than thirty years, and probably for more than forty years; and that during all the time after the conveyance by D. Azro A. Buck to Wyman, until the commencement of this suit, the defendant and those under whom he claims had claimed the land in dispute, as a portion of the land included in the deed to Wyman, and that, to the time of the deed from the plaintiffs to Allen, neither the plaintiffs, nor D. Azro A. Buck, had ever made any claim to the land in dispute.

The plaintiffs, for the purpose of rebutting the evidence of the defendant, offered to prove, that the land in dispute, at the time of the deed from D. Azro A. Buck to Wyman, was between the middle of the road and the middle of the stream, and that, in consequence of the stream cutting a deeper channel and the road being laid farther west in 1836, this land became suitable and convenient for use, without interfering with the road or the stream.

It was admitted, that on the tenth of September, 1813, D. Azro A. Buck owned the land on both sides of the road, and that before his death he conveyed that on the west side of the road, opposite the land in dispute. The plaintiffs also conceded, that they did not claim, that either they or D. Azro A. Buck had ever been in possession of the land sued for, since the conveyance to Wyman; but they claimed, that the possession, since that time, had been vacant.

The court being of opinion, that the deed from D. Azro A. Buck to Wyman would convey all the land to the middle of the stream and to the middle of the road, and the plaintiffs not contending, that any of this land could, on such construction, be exempted from the operation of the deed, a verdict was taken for the defendant, and the plaintiffs excepted to the decision of the court.

*Hebard & Martin* for plaintiffs.

The plaintiffs contend, that by the terms of the description in the deed from Buck to Wyman the road is necessarily excluded; and if so, it is equivalent to a declaration, that no part of the road is intended to be conveyed. *Tyler* v. *Hammond*, 11 Pick. 193. If the description be of land lying on the *east side* of a road, it must be construed to lie entirely on the east side of such road. *Bodley et al.* v. *Taylor*, 2 U. S. Cond. R. 227. 11 Pick. 193. *Jackson* v. *Hathaway*, 15 Johns. 447. *Starr* v. *Child*, 20 Wend. 164. *S. C.*, 4 Hill 369. *Sibley* v. *Holden*, 10 Pick. 249. We contend, that the point of beginning is not, where the centre of the road and the centre, or thread, of the stream intersect,—but that it is, where the eastern side of the road and the northerly side of the stream intersect. Where land was described as running " on the southerly bank of said river," it was held, that the *bank* and not the thread of the river was the bound intended. *Albee* v. *Little*, 5 N. H. 277. This is shown by the language used in describing the *terminus* of the first line,—" thence on the eastern side of said road, until the [eastern side of] said road strikes the bank of said branch."

There can be no question, at common law, but what the plaintiffs are entitled to their action to recover possession of the real estate, to which their ancestor was entitled, in his lifetime. The decision in *Boardman* v. *Bartlett*, 6 Vt. 631, was made under the provisions of sec. 3 of the probate act of 1821; [Sl. St. 346;] but the statute now in force is very different in its provisions.

*L. B. Vilas* and *C. W. Clark* for defendant.

The plaintiffs cannot maintain this action, as heirs, without showing a decree of distribution of the estate of their ancestor, by the probate court. *Boardman* v. *Bartlett*, 6 Vt. 631.

The deed from Buck to Wyman conveys to the centre of the highway, and consequently includes the premises in dispute. A grant of land, bounded upon a highway, carries with it the fee to the centre of the road, as parcel of the grant. *Stevens* v. *Whistler*, 11 East 51. *Grose* v. *West et al.*, 7 Taunt. 39, [2 E. C. L. 19.] 1 Sw. Dig. 106. 3 Kent [3d Ed.] 433. *Chatham* v. *Brainard*, 11 Conn. 60. *Champlin* v. *Pendleton*, 13 Conn. 23. *Jackson* v. *Hathaway*, 15 Johns. 447. In *Johnson* v. *Anderson*, 6 Shep. 76, it is

said, that "a grant of land, bounded upon a highway, carries the fee in the highway to the centre of it, if the grantor at the time owned to the centre, and there be no words showing a contrary intent." There may be little doubt, but proprietors of land adjoining a highway may convey in such a manner, as to exclude the fee in such highway; but such an intention must appear by express terms in the deed, and will never be presumed; for it is admitted by all the cases, that the general rule of the common law carries the fee to the centre, and as the exclusion of the highway becomes the exception, that exception ought to be expressly stated. In *Tyler* v. *Hammond*, 11 Pick. 193, and *Sibley* v. *Holden*, 10 Pick. 249, the descriptions in the deeds, which were by metes and bounds, were held to furnish evidence of an intention on the part of the grantors to exclude the road. It is well settled, that a boundary upon a fresh water stream, not navigable, carries the fee *ad filum aquæ;* and there is a perfect analogy between that case and a boundary upon a highway. 3 Kent [3d Ed.] 427, 432. *Olinda* v. *Lothrop*, 21 Pick. 292. *Starr* v. *Child*, 20 Wend. 149. *King* v. *King*, 7 Mass. 496. *Luce* v. *Carley*, 24 Wend. 451. *Lunt* v. *Holland*, 14 Mass. 149. *People* v. *Canal Appraisers*, 13 Wend. 355. *Canal Com'rs* v. *People*, 5 Wend. 423. Ang. on Water Courses 4.

The opinion of the court was delivered by

Poland, J. The first question made in this case arises upon the defendant's objection, that this action cannot be sustained by the present plaintiffs, because there has been no decree made by the Probate Court, directing a division of the estate among the several heirs entitled to it; and the case of *Boardman* v. *Bartlett*, 6 Vt. 631, is relied upon, to sustain the objection. That case arose and was decided under the statute of 1821, which expressly prohibited heirs and devisees from maintaining actions of trespass, or ejectment, for lands of the testator, or intestate, until such estate shall be set off to them by order of the Probate Court. The Revised Statutes of this state do not contain any such prohibition, and indeed no prohibition whatever, except in cases where there has been an administrator or executor appointed, who has assumed the trust of administering upon the estate. See Rev. St., p. 269, sec. 11. By the common law, upon the death of the ancestor the title

immediately descended to and vested in the heir, and he was the proper party to bring an action for any injury to the realty; and as this case is clearly not within any of the prohibitions contained in the Revised Statutes, this objection of the defendant cannot be sustained and was properly overruled by the county court.

Another and much more important question is raised in the case upon the construction of the deed from D. Azro A. Buck to Daniel Wyman, dated September 10, 1813, as to the extent of the boundary line of the premises conveyed, and especially, whether any part of the road, or highway, mentioned in said deed, is to be considered as included within the description of the land conveyed.

There has been much discussion in this country, both by the courts and elementary writers, in relation to the rules, which should govern in the construction of deeds and grants of lands lying upon or bounded by highways, or streams not navigable; and the most perfect harmony has not prevailed among the various decisions of courts and opinions of law writers upon this subject. The following general principles, however, seem now to be pretty well established. That where one owns land adjoining to or abutting a highway, the legal presumption is, in the absence of evidence showing the fact to be otherwise, that such land owner owns to the middle of the highway;—so, also, where one conveys land adjoining to or bounded upon a highway, (of which the grantor owns the fee,) the law presumes the party intended to convey to the middle of the highway, and will give the deed such an effect, unless the language used by the grantor is such, as to show a clear and explicit intent to limit the operation of the deed, or grant, to the *side*, or *outer edge*, of the highway. And in all cases, where general terms are used in a deed, such as " to a highway," or " upon a highway," or along a highway, the law presumes the parties intended the conveyance to be to the middle or centre line.

The doctrine has sometimes been advanced, that where land was conveyed, which abutted upon a highway, though by a description which did not include any part of the highway itself, yet the grantee would take to the middle of the highway, upon the principle, that the highway would pass as *appurtenant* to the adjacent land. This doctrine seems now, however, to be very justly and generally exploded. The owner of the fee of the land, upon which a public high-

way is located, has not a mere easement in the land, which might pass as a mere *appurtenant ;* but he is considered as still the real owner of the soil and freehold in the land, and entitled to the use and possession of it, so far as it can be used, or occupied, without detriment to the rights of the public to use it for a highway; and he may maintain trespass, or ejectment, even, against any other person, who commits an injury upon the soil, or makes an erection upon it.

The true reason, why this doctrine cannot be sustained, is well stated by PLATT, J., in giving judgment in the case of *Jackson* v. *Hathaway*, 15 Johns. 447. He says, "A mere *easement* may, without express words, pass as an incident to the principal object of the grant ; but it would be absurd to allow the fee of one *piece of land*, not mentioned in the deed, to pass as appurtenant to another distinct parcel, which is expressly granted by precise and definite boundaries." And the law is laid down in nearly the same language by WILDE, J., in delivering the opinion of the court in the case of *Tyler* v. *Hammond*, 11 Pick. 193, and by MORTON, J., in the case of *O'Linda* v. *Lathrop*, 21 Pick. 292 ; and we are not aware, that this doctrine is now held, *in terms*, by any court in England, or in this country.

The question, then, whether, in a conveyance of land abutting upon a highway, the highway is included and passes to the grantee, or whether it is excluded and does not pass, becomes in all cases a matter of construction and intention merely, from the language used by the parties, and such surrounding circumstances, as are proper to be taken into the account in ascertaining the intentions of the parties,—keeping always in view the legal presumption, that the parties intended to include the highway, and that the burden is upon the party, who assumes to show, that the parties intended the contrary.

From the plan, referred to in the bill of exceptions in this case, it appears, that the piece of land conveyed by D. A. A. Buck to Wyman was a narrow strip of land, lying between the road and the branch, terminating at the south end in a sharp point, at the intersection of the road and the branch, the road there crossing the branch diagonally ; and the main question seems to be in this case, as to the starting point mentioned in the deed. The plaintiffs claim, that it is at the intersection of the northern, or western, bank

of the branch and the eastern edge, or side, of the highway. The defendant claims, that by a proper construction of the deed the point of intersection is where the centre line of the branch and the centre line of the road intersect,—which is several rods farther south than the point claimed by the plaintiffs. The land in dispute is between these two points.

If the position of the plaintiff, as to the point of beginning, in the description of the premises in the deed, were admitted to be correct, it would not be important to inquire, whether any part of the highway was included in the premises conveyed, or not, as we think, if the centre of the road were the boundary intended, it would have to be reached by a direct line from the starting point, and thus the land in dispute not be covered by the deed. But as the whole description is to be taken together, in order to ascertain the intent of the parties, and the proper determination of the place of beginning may be materially affected by the construction given to the deed in this particular, we have examined the case in reference to the question, whether the land conveyed goes to the centre of the highway, or only to the eastern side, or edge, thereof.

It may be proper here to notice some of the leading decisions in similar cases; though in cases, where we are merely seeking the intent of the parties from the language they have used, not very much aid can be obtained from authorities, except where the very same language is used. In the case of *Jackson* v. *Hathaway,* 15 Johns. 447, it was held, that, where land was conveyed, and bounded upon the *side* of a road, no part of the highway passed by the deed. In the case of *Sibley* v. *Holden,* 10 Pick. 249, tenants in common owned land lying upon both sides of a highway, and executed mutual deeds to make partition of their land; and in the deeds the land was described as beginning at a stake and stones on the *side* of the road, thence, by various courses, to said road again, thence by said road to the place of beginning; and it was decided, that no part of the road was included in the conveyance, but that it still belonged to both, as tenants in common. In *Tyler* v. *Hammond,* 11 Pick. 192, a piece of land was conveyed by certain metes and bounds, and was also described as bounded upon one side of a road; and it was held, that no part of the road passed by the deed, it not being included within the metes and bounds given by the deed.

The following cases were conveyances of land bounded upon streams not navigable; and all authorities seem to agree, that the law is the same in relation to such waters, as in the case of highways. 3 Kent 432, and notes.   In the case of *Albee* v. *Little*, 5 N. H. 277, it was held, where a deed of land described it as beginning at a river, and then the line was particularly described, until it came to the river again, and was then described as running " on the southerly and easterly bank of said river to the bound first mentioned," that the conveyance did not extend to the centre of the stream, but only to the side, or bank.   In *Hatch* v. *Dwight et al.*, 17 Mass. 289, the description of the land was, " Beginning at the west end of the dam on Mill river, at the upper mills, so called, thence running up the river two rods, thence westwardly, &c., thence to the bank of the river,"—and it was held, that the words used clearly excluded any part of the stream.

The defendant relies mainly upon the following cases ;—*Chatham* v. *Brainard*, 11 Conn. 60, where the land was described by courses and distances, and was also described as bounded *easterly on the highway*, and it was held, that the deed extended to the centre line of the road ; though considerable stress seems to be laid upon the fact, that it did not appear clearly, that, by the courses and distances as given, the road was excluded.   In the case of *Champlin* v. *Pendleton*, 13 Conn. 23, land adjoining a highway was conveyed by metes and bounds, without mentioning the highway ; but it *being* made to appear, that the south line of the land and the north line of the highway were the same, it was held, that the conveyance extended to the middle of the highway.   In the case of *Starr* v. *Child et al.*, 20 Wend. 149, the deed described certain premises by a line *running to the river, thence along the shore of said river to a certain street ;* and it was held by a majority of the supreme court of New York, that the grantee took to the middle of the river.   This case was afterwards carried up and decided by the court of errors in that state, and the judgment of the supreme court was reversed, and it was held, that the grantee only took to low water mark, and that no part of the bed of the river was included in the deed.   4 Hill 369.

To return, then, to the language of the deed in this case ;—" Beginning at the intersection of the road from Chelsea village to Allen's

saw mill and the branch on which the saw mill stands on the north-erly *side* of said branch and nearly opposite my now dwelling house, thence on the *easterly side* of said road, until the said road strikes the bank of said branch, thence down said branch in the middle of the channel to the first mentioned bound." The land is described as bounded on the west by a line running on the *easterly side* of the highway ;—now upon what ground can it be fairly said, the parties intended, by the *easterly side*, the *centre line* of the highway ? The language, as commonly used and understood, certainly does not im-port that ; and it seems to us, that when the case is viewed in the light of the authorities upon the subject, the great majority of them are against giving this deed such a construction, as the defendant claims for it. The case in 13 Conn. is an authority sufficiently strong to sustain the defendant's view ; but that case is directly at variance with the case in 11 Pick., and, as it seems to us, cannot be sustained upon the principle established, even in Connecticut, that the highway must come within the description and cannot pass as appurtenant merely.

Where, then, is the starting point in the deed? In the first place it is to be on the northerly *side* of said branch, and, as we under-stand the terms used, they must refer to the *bank*, and not to the centre, or thread, of the stream. The line leading from this point is to follow the easterly *side* of the highway, which, as already stated, in our opinion, is to be construed to mean the eastern edge, or *line*, of the road, and not the *centre line* of the road. We come to the conclusion, therefore, from the language used in this deed, that the true starting point is at the intersection of the northerly *bank* of the stream and the *eastern side*, or edge, of the road, and that no land lying south of that point was intended to be conveyed by the deed ; and also that no part of the highway was intended to be included in the deed.

The judgment of the county court is therefore reversed and a new trial granted.

REDFIELD, J., dissenting. The importance of this case to the immediate parties would hardly justify me in making a formal dis-sent from the opinion of the court; and could I feel any assurance, that the decision made in this case will not hereafter be regarded,

as having virtually set aside the well settled rule of law, that land bounded, by deed, or other conveyance, upon a fresh water stream, not navigable, or by the side of a highway, is to be regarded as extending to the centre of such boundary, I would surely not occupy the time of the court, or space in the reports, by making any dissent from the judgment of the court in this case.

But if I comprehend that rule, and also its application to the facts of this case, it must be regarded, hereafter, as virtually abrogated, in this state, for all useful purposes. The rule itself is mainly one of policy, and one which to the unprofessional might not seem of the first importance; but it is at the same time one, which the American courts, especially, have regarded as attended with very serious consequences, when not rigidly adhered to; and its chief object is, to prevent the existence of innumerable strips and gores of land, along the margins of streams and highways, to which the title, for generations, shall remain in abeyance, and then, upon the happening of some unexpected event, and one, consequently, not in express terms provided for in the title deeds, a bootless, almost objectless, litigation shall spring up, to vex and harrass those, who in good faith had supposed themselves secure from such embarrassment.

It is, as I understand the law, to prevent the occurrence of just such contingencies as these, that, in the leading, best reasoned and best considered cases upon this subject, it is laid down and fully established, that courts will always extend the boundaries of land, deeded as extending to and along the sides of highways and fresh water streams, not navigable, to the middle of such streams and highways, if it can be done without manifest violence to the words used in the conveyance. And to have this rule of the least practical importance to cure the evil, which it is adapted to remedy, it must be applied to every case, where there is not expressed an *evident* and *manifest* intention to the contrary,—one from which no rational construction can escape. The rule, to be of any practical utility, must be pushed somewhat to the extreme of ordinary rules of construction, so as to apply to all cases, when there is not a clearly expressed intention in the deed to limit the conveyance short of the middle of the stream, or way. If it is only to be applied, like the ordinary rules of construction as to boundary, so as to

reach, as far as may be, the clearly formed idea in the mind of the grantor at the time of executing the deed, it will ordinarily be of no utility, as a rule of expediency, or policy. For in ninety nine cases in every hundred the parties, at the time of the conveyance, do not esteem the land covered by the highway of any importance, either way; hence they use words naturally descriptive of the prominent idea in their minds at the time, and, in doing so, define the land, which it is expected the party will occupy and improve. This is the view taken by Wallace, in the American notes to *Dovaston v. Payne*, 2 Smith's Leading Cases 90, where the cases upon this subject are collated and compared.

The general rule as to monuments undoubtedly is, that the centre of such monuments, stake, stone, tree, rock, &c., is intended, when lands are so defined. So, also, in regard to highways and streams, when referred to in deeds as the limits of the grant, or conveyance, the middle is to be presumed to be the limit, unless the contrary be clearly expressed. The real boundary, then, is the belt of land extending along the highway, or stream, between the margin and centre. And this will ordinarily be referred to, as extending to the road, or the stream, as to a wall, or stone, or tree, &c.,—the intention being to convey one half of the monument.

But if land be bounded, as extending to other land of the grantor, or along another strip of land, ever so narrow, owned by the grantor, it will be supposed the margin of the land is intended. *Seventeenth Street*, 1 Wend. 262. *Lewis Street*, 2 Ib. 472. *Livingston v. Mayor of New York*, 8 Ib. 85. But in this case there is no ground to suppose, that the party, while describing one piece of land, intended to convey half of another piece, as appurtenant to it. Land cannot be conveyed, as appurtenant to other land; if conveyed at all, it must be as parcel of the land conveyed. And it is this rule, which the Massachusetts courts have attempted to apply to the case of lands bounded along the side of a highway. *Tyler v. Hammond*, 11 Pick. 94. *Webber v. Eastern Rail Road Co.*, 2 Met. 147. The Massachusetts courts, too, have repudiated Chancellor Kent's view,— 3 Kent 433,—*in toto*. But if any thing whatever is attempted to be made out of the rule, beyond mere show, the reasoning of the Chancellor is the only ground, upon which it can stand, that is, to treat it as a rule of policy merely, (and not one of intent chiefly,) to be

applied to all cases, where there is not a clearly defined intention to the contrary.

This rule we find fully adopted in two elaborate and well considered cases in Connecticut,—*Chatham* v. *Brainard*, 11 Conn. 60, and *Champlin* v. *Pendleton*, 13 Conn. 23. The same rule is now fully established in New York, both as to highways and streams, putting them both upon the same ground; *Starr* v. *Child*, 20 Wend. 149; *Canal Com'rs* v. *People*, 5 Wend. 423; *S. C.*, 13 Wend. 355; and this notwithstanding the decision in *Starr* v. *Child* was reversed by the court of errors, [4 Hill 369,] by a vote of eleven to ten,—the vote constituting the majority being perhaps that of some senator, who had acquired his knowledge of law in a counting room, or upon a canal boat. The New York courts have repeatedly refused to regard the decision of their court of errors as evidence of the law, in that state even, except as to the particular case; and it has never been regarded elsewhere as much evidence of the law of any case. This same rule has been adopted in many of the other American states. It only remains to inquire, how far it applies to the present case.

It seems to me, that there is no difficulty in applying the terms used in this conveyance in the manner for which I contend. The place of beginning is " the intersection of the stream and the highway on the northerly side and nearly opposite my now dwelling house." The mention of the dwelling house of the grantor is evidently referred to, to show in what vicinity the "intersection" is,— not to fix any particular point, as the point of beginning. The term is not the *point* of intersection, but the intersection of the whole stream and the whole highway. The northerly side of the stream is named, not to fix any starting *point*, but to show upon which side is the land, as the grantor owned land upon both sides, and the intersection was upon both sides. And it is evidently not a point upon the bank, which was intended to be fixed as a starting point, as the returning line of the circuit is expressly defined to be in the middle of the stream and to return to the "first mentioned bound,"—which would be impossible and absurd, if the bound were upon the bank of the stream. And every contract should be so construed, as to give every portion its just operation, when that can be done. " Thence on the easterly side of said road" is

wholly consistent with the rule, for which I contend, and with the decided cases upon this subject. "Until said road strikes the bank of said stream" comes next; and it does not seem to me, that there is any difficulty with this, upon the view I take of the case. If the side of the road means one half of it, and so of the bank of the stream, then when they come in contact it answers the call. And it is evident, the term *bank* is here used in the precise sense, for which I contend, as the description proceeds, "Thence" (that is, from the bank) "down said branch, in the middle of the channel, to the first mentioned bound."

Now I submit, that the language of this description in general, as to the terms used, *more strongly* indicates an intention only to go to the margin of the stream, than it does to the margin only of the road, aside from the *express provision* in regard to the easterly *side* going to the *middle* of the channel. The ends of this line are defined to be on the "northerly side of the stream" and "the bank of said branch," and yet the line between these two monuments is expressly defined to be "in the middle of the channel"; thus showing, that the other terms are used to imply an extension to the "middle of the channel." Why, then, it may be asked, shall we not hold, that "the easterly side of said road" means the easterly half of said road, as well as of the stream. It does seem to me extremely difficult to escape from this conclusion by any satisfactory reasoning, which does not, at the same time, subvert all the leading cases upon this subject, and, in effect, overthrow the rule itself.

The consideration, too, that the ancestor of the plaintiffs had never made any claim to this land for more than twenty or thirty years, and had no suspicion of any such title remaining in him, goes very far, in my mind, to corroborate the view, which I have taken of the case. For these reasons I cannot concur with the decision of the court.