WOODMAN *v.* SPENCER.

A deed contained the following description of one of the lines of the land conveyed: " * * westerly to the river road, so called; thence northerly *on the easterly side of said road* to," &c.; and it appeared that the grantor was the owner of the soil of the highway. *Held,* that this description located the line at the centre, and not at the easterly margin of the highway.

COVENANT, by Charles Woodman against Seth Spencer and Mary Spencer. The action having been referred, the referees made the following report. The premises conveyed by the defendants to the plaintiff are thus described in the deed: "A certain tract or parcel of land, situated in said Bridgewater, bounded and described as follows: Commencing at the west bank of the Pemigewasset river at the south-east corner thereof, at the corner of Joseph Heath's land; thence south-westerly on said Heath's land and land of Josiah E. Morrison to land of Sylvester Cross; thence north-westerly binding on said Cross's land and John Fogg's land to Luther Barrett's land; thence north-easterly on said Barrett's land to the road leading from the river road to Bridgewater meeting-house; thence crossing said road and binding on said Barrett's land to the river road; thence northerly on the west side of the river road to land owned by Darius G. Cross; thence easterly across the river road to said river; thence southerly on said river, to bound begun at, containing one hundred acres, more or less, with the buildings thereon: meaning to convey all the land known as the homestead of Theophilus Ladd, late of said Bridgewater, deceased." The premises conveyed by James Brown and wife to Theophilus Ladd are thus described in their deed: "A certain tract or parcel of land lying in said Bridgewater, and is a part of lots number twenty-six and twenty-seven in the first division, and bounded as follows, viz., beginning at the north-easterly corner of lot numbered twenty-six on the bank of the Pemigewasset river; thence southerly on said river to the southerly line of lot numbered twenty-seven; thence westerly on said southerly line to the river road so called; thence northerly on the easterly side of said road to the northerly line of lot numbered twenty-six; thence easterly on said northerly line to the bound first named, excepting and reserving the land formerly deeded for the accommodation of a school-house: meaning by this deed to convey all the land I own, on the easterly side of the river road, on said lots, containing by estimation twenty acres, more or less (also one other piece, and bounded, beginning at a stake and stones on the westerly side of the river road, and on the southerly line of said lot numbered twenty-seven; thence westerly on the southerly line of said lot to land owned by William Fogg; thence northerly by said Fogg's line to the northerly line of said lot numbered twenty-seven; thence easterly on

said northerly line to the road leading to John Harran's; thence easterly on the southerly side of said Harran's road to the river road; thence southerly on the westerly side of the river road to the bound first named), with the buildings thereon, by estimation fifty-five acres, more or less, excepting and reserving the right of Jonathan Ferrin to carry water across said lot. Also, one piece bounded, viz., beginning at a stake and stones about twelve rods west of the house on the northerly side of the Harran road; thence easterly on the northerly side of the house about twelve rods to a stake and stones; thence easterly about five rods to a stake and stones; thence southerly on the westerly side of the river road to the Harran road; thence westerly on the north of the Harran road to the bounds begun at, with the buildings, containing one half of an acre, more or less." It was conceded by the parties that the defendant's title was the same as Ladd had by said last named deed.

The question between the parties was, whether the defendant by said last named deed had the title to the highways as the same are conveyed in the first named deed. If the court shall hold that he had, then we find and award that the defendant recover of the plaintiff

costs of reference, taxed, &c.   If the court shall hold that he had not, then we find and award that the plaintiff recover of the defendant, &c.

The plan of the premises used before us may be referred to by either party in the presentation of their views to the court.   The foregoing . sketch may give some idea of the premises as described on the above named plan.

The Harran road is the same as the road leading from the river road to Bridgewater meeting-house.

At the trial term, to which the above report was returned, the court, after examining the plan, intimated that the defendant did not by the last named deed acquire a title to all portions of the highways conveyed in the first named deed, and that the plaintiff would, therefore, by the literal terms of the report, be entitled to judgment for the full damages awarded.   Thereupon the plaintiff's counsel agreed that, if it shall be held at the law term that any portion of the highways conveyed in the first named deed was conveyed to the defendant by the last named deed, the report may be recommitted for such reduction of the damages as the referees shall think just.

*Blair*, for the plaintiff.

*Burrows*, for the defendants.

LADD, J.   It was agreed that the defendant, at the time of his conveyance to the plaintiff, had the title which came to Theophilus Ladd by the deed of James Brown and wife; and the question before the referees was, whether the defendant, by virtue of that deed, had the title to the highways, as the same are conveyed in his deed to the plaintiff.   The main matter for our opinion, therefore, is the construction to be put upon the description of the premises in the deed of Brown and wife to Ladd, as regards the highways mentioned therein.

The plan used before the referees, and by them made part of this case, shows that the land covered by the deed in question, though described as three distinct and separate parcels, lay together, in a single body quite compact in form, along two highways,—the river road and the Harran road,—which here intersect at nearly a right angle.   This L shaped tract of land, composing the farm, is, in fact, divided into three pieces by the two roads which traverse it; viz., one piece containing twenty acres, more or less, lying wholly east of the river road, and between that road and the Pemigewasset river; one piece containing fifty-five acres, more or less, on which stand the barn and shed, lying in the south-west opening or angle formed by the junction of the two roads, that is, west of the river road and south of the Harran road; and one piece lying in the north-west angle of the two roads, that is, west of the river road and north of the Harran road, containing one half acre, more or less, on which stands the house; and the only description of the premises in the deed is a separate description of each of these three parcels.   Does that description cover the roads, or is an

intention to exclude the roads thereby made so clear and manifest as to admit of no other construction ?

It is said, in the first place, that the fact of the farm being described in three separate parcels as divided by the roads, instead of all together as a single tract, affords evidence of an intention on the part of the grantor to exclude the soil under the roads from the operation of the deed, and to limit each tract by the outer margin of the adjacent road.

The weight to which this argument is entitled might perhaps be somewhat affected by an examination of the history of the title prior to Brown. If, for example, it had come to Brown, or even to some one before Brown, in the line of the title, from three separate sources by three distinct deeds, that fact might to some extent account for the form of description in Brown's deed to Ladd, upon a ground that would not necessarily signify anything one way or the other, as to an actual intention to exclude or include the roads. So if it should turn out that, from an early period in the history of the title, this description had been used with the understood and acknowledged purpose of excepting nothing more than the right of the public in the highways, by way of exception to the covenant against incumbrances, and that such practical construction had always been put upon it by the parties interested, that would doubtless be a proper matter for consideration upon the question of what this grantor, in fact, meant by the mode of description and the language he has used in his deed. But no facts of this sort are before us, and we shall not place our decision at all upon any such speculations. Let it be admitted that the description in three separate parcels, one of which is bounded all the way on one side, and the other two, each, all the way on two sides, by the roads, has a tendency more or less strong, to show an intention to exclude the roads ; still, if the description of the separate parcels is, nevertheless, sufficient to carry the boundary in each case to the centre line of the adjacent road, the fact of a description in three pieces becomes of no significance ; while, should it be found necessary to go for construction to the general scope and tenor of the whole deed taken together, this would be a consideration to be weighed for whatever it is worth against the very strong improbability that either the grantor or grantee could have understood or intended, in point of fact, that the roads were excluded, so that the soil of those long, narrow strips of land, crossing and dividing the farm, should be left in the grantor.

But the plaintiff relies mainly upon the language used in describing each of the tracts, which, he says, clearly and unmistakably excludes the roads.

In the particular to which our attention has been directed, the description of the three pieces is substantially the same. We may therefore examine the description of the first piece, that lying east of the river road, which is as follows: after describing the line on the river—" thence westerly  *  *  to the river road ; thence northerly *on the easterly side of said road* to the northerly line of lot numbered twenty-six."

It is said that these words are capable of no construction except such as makes the westerly line of this tract the easterly margin, rather than the centre line, of the strip devoted to the public use for a highway.

It has long been settled in this state that where there is nothing to control it, a grant, running to and then bounding on a highway, extends to the centre of the road. *Reed's Petition*, 13 N. H. 381; *Goodno* v. *Hutchinson*, Coös, December 7, 1873; *Nichols* v. *Suncook Manf. Co.*, 34 N. H. 345; *Rix* v. *Johnson*, 5 N. H. 520; *Kimball* v. *Schoff*, 40 N. H. 190; and no question is made, but that if the words here had been "thence on said road" instead of "thence on the easterly side of said road," one half the road would be included. Let us see what is the difference. In the first place, the approved construction with respect to a bounding upon, by, or along a highway is anomalous. We are told that the highway is to be regarded and treated as a monument, the same as a tree, a wall, and the like, the centre of which marks the location of the line. But why should it be so regarded and treated? A highway is nothing more or less than a strip of land appropriated to a particular public use, and subject to certain rights in the public. The thing itself to which the easement attaches is simply a strip of land. If, then, we look only at the actual character of the thing adopted as a boundary, a strip of land four rods wide used for a highway is no more a monument, than a strip of land four rods wide used by an adjoining proprietor for a garden. Nor does the deed on its face show an intention to adopt the whole strip of land instead of its marginal line as a monument, thus locating the line at the centre of the strip, in one case any more than in the other. But a bounding of one piece of land " upon," " by," or " along" another piece, whether such other piece be long and narrow, or in any other form, locates the line at the edge and not through the middle of the adjoining premises; and the question is, Why should the line be carried to the centre of the highway by construction, while, in the other case supposed, it is by construction placed at the margin of the strip? The answer to this question is found either in the *ratio decidendi*, or in express terms, in every case where the doctrine has been applied, viz., the strong and controlling presumption that it was not the intention of the grantor to except from the operation of his deed, and so retain, in himself, the fee to such a long, narrow strip of land, subject to an easement in the public which may be perpetual, and that it was not the intention of the grantee to accept a deed which should give him none of the usual rights of an adjoining owner in the soil of the highway, and which may have the effect to leave his premises inaccessible in case the rights of the public in the road should be surrendered. See our own cases, cited above; also, Am. note to *Davaston* v. *Payne*, 2 Sm. Ld. Cas. 216, and the authorities there referred to.

In seeking for the intention of the parties, which is always the ultimate inquiry, the subject-matter to which the instrument relates, no less than its language, must be considered. Says PARKER, J., in *Sumner* v. *Williams*, 8 Mass. 214,—" It would be a disgrace to any system

of jurisprudence to permit one party to catch another by a form of words, which, perhaps, neither party understood." The strong presumption already spoken of with respect to the location of the line of land bounded on a highway, or stream not navigable, which places the line at the thread instead of the margin, arises from such consideration of the nature and situation of the thing to which the deed applies.

Ordinarily, the benefit to the grantor of retaining his right in the soil of the road would be so small as to be almost or quite inappreciable; ordinarily, the present actual inconvenience to the grantee, together with the possible and even probable damage that may in the future result to him upon a discontinuance of the road, would be matter of very considerable importance,—enough to interfere seriously, in most cases, with the price which could be obtained for the land. It is improbable that a man will insist on an exception, the only and certain effect of which must be to materially diminish the salable value of his land, when he is to gain nothing by it.

It is improbable that two men have understandingly entered into a bargain which contains a stipulation plainly and clearly to the disadvantage of both. *A priori*, they would not be likely to do such a thing; therefore, *a posteriori*, it is not likely they have done it. The language of their deed is to be read in the light of this improbability.

This consideration, with others of a like nature, has led courts to adopt the rule of construction we are discussing, said to rest on a presumption that where the granted premises are bounded by or on a highway, it was the intention of the parties to treat the whole strip as a monument, and locate the line at the centre; in other words, upon a conclusion of fact as to the intention of the parties, made up by the court from a consideration of the nature and situation of the thing to which the deed relates, in connection with the literal language in which they have undertaken to express that intention.

In the case before us the language is, " thence on the easterly side of the road;" and it is upon this expression that so much stress is laid, the contention being that the parties meant a different thing when they said *on the side of the road*, from what they would have meant had they said *on the road*. What is there in the nature of the thing described to suggest any such difference in meaning? I see nothing. The bounding of one piece of land by or upon another, fixes the line at the margin of such other piece. Carrying the line over to the centre of a strip used for a highway is, as we have seen, an anomaly in the construction of deeds which rests upon a presumed intention not to exclude, or, perhaps, the want of a distinctly formed intention to exclude, what neither party may have known could come within the operation of the deed at all. It is manifest that, if we were to apply the usual canon of construction, the words on the road just as clearly denote an intention to bound the land by the marginal line of the highway, as do the words on the side of the road. Considering only

the nature of the thing and the commonly received import of the words, the two expressions are substantially identical, and might be used interchangeably without altering the sense.

Generally speaking, that portion of the land of a farm which is available for the purposes of husbandry in this state includes no part of the highways that cross it. Those strips of land are ordinarily and naturally looked upon as being, to all practical intents, withdrawn as well from the control as from the beneficial enjoyment of the adjoining owner, by the servitude to which they are subject. For this reason it is to be expected that the expressions, on the road, or, on the side of the road, will find their way into deeds, when, in fact, nothing was further from the minds of the parties than that they were in that way excluding from the operation of the instrument any part of the roads, or that the roads could in any event be affected by the deed one way or the other; and I confess it looks little less than absurd to me to attempt a distinction between two forms of expression evidently intended to convey the same idea, and which in the common and correct use of the language do convey the same idea to the professional as well as the unprofessional mind.

It is only when we incorporate into the first expression " on the road " the anomalous rule of construction of which we have spoken, thereby making it the same as though it read " on the centre line of the road," that any difference in the sense can be made to appear. But there is no reason why effect should not be given to the obvious intention of the parties in one case as much as in the other, and no reason why the same rule of construction should not be applied to one of two equivalent expressions as well as to the other.

The conclusion is, that if we examine only the language used in describing the first parcel contained in this deed, and apply to it the well established construction respecting boundaries upon highways, the westerly line located at the centre of the highway. This view is sustained, as I think, by all the cases in this state and elsewhere, in which it has been held that a bounding on, by, or along a highway or stream not navigable, in the absence of anything else to control the description, locates the line at the centre instead of the margin of such highway or stream. Those cases are very numerous, and the doctrine quite too well settled to require their citation. Only one case has been found, decided in a state where the above doctrine is held, with which our conclusion in the present case seems to be at variance.

In *Buck* v. *Squiers*, 22 Vt. 484, premises were described as " beginning at the intersection of the road from Chelsea village to Allen's saw-mill, and the branch on which the saw-mill stands, on the northerly side of said branch nearly opposite my now dwelling-house; thence on the *easterly side* of said road until the said road strikes the bank of said branch; thence down said branch in the middle of the channel to the first mentioned bound; " and it was held by a divided court that the description excluded the whole road. There is, however, a well considered and forcible dissenting opinion by Judge REDFIELD, which,

it would seem, must shake the authority of the case even in the juris-
diction where it was decided.

On the other hand, cases are not wanting, decided by courts of high
authority, which go quite as far, to say the least, as we go here, in the
same direction. In *Johnson* v. *Anderson*, 18 Me. 76, the description in one
of the deeds was, " beginning on the westerly side of the county road;
thence running northerly, touching on the westerly side of said road, forty
rods;" then the line of boundary leaves the westerly side of the road,
and, after describing the other bounds, returns to the first mentioned
bound.   It was held that the description carried the fee in the highway
to the centre of it.   This was the description in the plaintiff's deed.
The defendant's deed of land lying opposite, on the other side of the
same highway, described the line next the highway as running " thence
on the said road."   It does not seem to have occurred to the court or
counsel that there could be any real difference in the two phrases; and
exactly the same effect is given to each of them, namely, to carry the
fee to the centre of the road.   In *Paul* v. *Carver*, 26 Pa. St. 223, 225,
the boundary was brought by so many feet " more or less to Tidmarsh
street; thence south-easterly along the northerly side of said street,"
&c.   On the street being afterwards vacated, it was held that half of
it passed with the lot that was bounded by its northerly side.   The
court (LEWIS, C. J.) say,—"A contrary opinion would introduce a flood
of unprofitable litigation.   But the rule has its origin in a regard to
the nature of the grant.   *   *   If a right of property in the streets
might, under any circumstances, be exercised by the grantor, he might
deprive his grantee of the means of entry into or exit from his house,
and of all the enjoyments of light and air, and might thereby deprive
him of the means of deriving any benefit from his purchase.   *   *
If the streets were to be vacated, of what value would they be to the
original grantors, unless for the purposes of annoyance to the lot-own-
ers ?   A long strip of ground, fifty or one hundred feet wide and per-
haps several miles in length, without any access to it except at each
end, is a description of property which it is not likely either party
ever contemplated as remaining in the grantor of the lots on each
side of it.   Influenced by these considerations, the law has carried
out the real intention of the parties by holding that the title passed
to the centre of the street, subject to the right of passage."   The dif-
ference between that case and the present is, that there the line was
brought by courses and distances, on the ground, to the margin of the
street, and from thence was actually located by the precise terms of
the description *along the northerly side* of the street, while here there is
nothing to locate the line except the words "on the easterly of s⁴ road."

In *Champlin* v. *Pendleton*, 13 Conn. 23, " where it appeared that the
south line of the land conveyed was the same as the north line of the
highway, although the highway was not mentioned or referred to in the
deed, it was held that the conveyance transferred the fee to the centre
of the highway."   WAITE, J., in delivering the judgment of the court,
says,—"An intention on the part of the grantor to withhold his inter-

est in the road after parting with all his interest in the land adjoining is never presumed. It ought to appear in clear and explicit terms, so that the grantee may understand that the grantor's interest in the road is not conveyed. See, also, *Stiles* v. *Curtis*, 4 Day 338."

In *Newhall* v. *Ireson*, 8 Cush. 595, it was held that a deed, describing the boundary line of the land conveyed as running northerly a certain distance to a highway, and from thence upon the highway, passes the land to the centre of the highway, although the distance specified by actual measurement carries the line only to the southerly side of the highway. SHAW, C. J., who delivered the opinion of the court, speaking of the fact that the last measurement brought the line to the southerly side of the highway, says,—"The court are of opinion that this fact does not rebut the strong presumption that boundary on a highway is *ad filum viæ.* The road is a monument: the thread of the road, in legal contemplation, is that monument or abuttal. * * Land may no doubt be bounded by the side of a highway, but it must be done in clear and distinct terms, to control the ordinary presumption." This case can hardly be distinguished from our own case of *Rix* v. *Johnson*, 5 N. H. 520, decided twenty years earlier. In the latter case, the description in the extent of an execution was " * * to a stake at the river; thence on the river N. 6° 40′ W. twenty-three perches; thence N. 39° 50′ W. thirty-three perches; thence N. 20° 20′ W. thirty-five perches and eight links, to a stake by the river." The three courses given described a line on Connecticut river, and it appeared that the stakes mentioned were erected at the time of the extent, and were placed between the ridge of the river bank and the water,—the southerly one about one rod from the water's edge, and the northerly one at the distance of eight or ten feet, the line between them coinciding nearly with the ridge of the bank. It was held that this description made the river the boundary, so that three or four acres of alluvion, which had formed by accretion upon the eastern side of the river, would belong to the person holding under the extent.

Here was a line established all the way by metes and bounds, and nowhere touching the river; yet an intention to extend the grant to the river was found in the words thence on the river, and that intention was given the effect to overthrow a definite line established by a survey, and distinctly marked at each end by monuments upon the ground. It certainly cannot be contended that the words, on the side, go any further to show an intention to exclude the road, than does the exact mathematical description, by courses and distances,. of a line which does, in fact, absolutely exclude the whole road.

The objection to be overcome seems quite as formidable, to say the least, in such cases as *Newhall* v. *Ireson* and *Rix* v. *Johnson*, as in the present.

An examination of the whole deed together will not, I think, disturb the conclusion to which we are brought by considering the literal language used in describing the separate pieces. It is true, a single piece of land, crossed by two highways, is conveyed in one deed by a sepa-

rate description of each of the three pieces into which it is divided by the highways. But this fact, when taken alone, even, does not bear wholly in one direction ; for, inasmuch as the grantor owned, and conveyed by the same deed, land lying on both sides of the highways, almost every conceivable motive° that might exist for excepting the highways, in case he still remained the owner of land on the opposite side, disappears. Such a long, narrow strip of land, adjoining laterally upon another piece, might be of value ; but when it is so situated that there is no access to it except at the ends, its value must be most seriously diminished.

But the answer, after all, to the argument derived from this source is, the extreme improbability that the parties could have intended to except the roads, and so leave the fee to those strips, traversing and dividing the farm into three pieces, one of them running between the house and barn even, still remaining in the grantor. It is inconceivable that two sane men could understandingly concur in doing a thing so absurd. At all events, it is safe enough to say that, looking at the whole deed, the presumption against an intention to exclude the highways, arising from the fact that they are wholly within the exterior lines of the tract conveyed, is quite as strong, to say the least, as the presumption against an intention to exclude one half a highway, which arises from words bounding the land upon or by the highway.

The result is, that the two roads, so far as they lie wholly within the exterior lines of the three parcels taken together, are not to be regarded as excepted in the deed of Brown to Ladd, and passed by that deed. As to that portion of the north line of the second piece, between the north-west corner and the westerly point of the third piece, that deed locates the line along the centre of the Harran road. As to that portion of the west line of the first piece, extending from the northerly point of the third piece to the north-west corner of the first, the deed locates it at the centre of the river road, and so conveys the east half of that road ; and the premises, thus defined and limited, were all the defendant had a right to convey. If, therefore, his deed to the plaintiff covers more, it is understood he is to be held liable in this action for such damage as the plaintiff has suffered thereby.

The plaintiff contends that the description in that deed embraces the whole of the Harran road, from the westerly line of the premises conveyed to the river road, and also the whole of the river road from the north corner of the house lot (the third piece) to the north line. As to the Harran road, the words are, " to the road ＊ ＊ thence crossing said road and binding on said Barrett's land to the river road." This description is not very intelligible. " Binding on " Barrett's land, of course, means the same as bounded by Barrett's land ; and this, if it stood alone, would be plain enough, since no question is made but Barrett's land is bounded on the south by the Harran road. But the words are, thence *crossing said road* and binding on Barrett's land, &c. An examination of the plan shows that before reaching the river road the line does cross the Harran road ; and if the collocation of the words

were changed so as to read, thence binding on said Barrett's land and crossing the river road, &c., it would be entirely plain.

The question is, Does this description locate the line along the northerly margin of the Harran road, or along the southerly line of Barrett's land ? Some light may, perhaps, be drawn from the description of the west line, which is, " thence north-easterly on said Barrett's land to the " Harran road. Now, it is clear that if the intention had been to cross the Harran road in the direction and in continuation of this west line, what is said about crossing the road would have naturally and properly been inserted in the description of that line ; that is, if there was no change in the direction of the line after reaching the road which is described as the terminus, there was no sense in commencing the description of another course or line at that point, introducing it by the word thence. The inference is, that after reaching the Harran road, that is, the centre of that road, the intention was to describe a new line commencing at that point, and running thence on the line of Barrett's land. Again : the words, binding on Barrett's land, are descriptive of the *line* which runs easterly from where the west line strikes the road ; and if we undertake to give to the words, thence crossing said road, the effect claimed for them, namely, to carry the west line entirely across the road at the point where it strikes it, we must wholly disregard those other words in the description which precisely determine the location and direction of the line. Unless, therefore, it should turn out that Barrett's land is not bounded on the south by the road so as to carry his south line to the centre line of the road, it follows that the defendant has not included in his deed more of this road than he had title to by virtue of the deed from Brown to Ladd.

As to the westerly half of the river road, north of the house lot, it seems clear enough that the defendant included that in his deed, inasmuch as the land conveyed lay on the easterly side of that road ; and since he had title only to the easterly half, the plaintiff is entitled to recover such damage as he has suffered thereby, and the report must be recommitted to the referees for the assessment of that damage.

The plaintiff insists that there has been a breach of the covenant against incumbrances, because none of the highways crossing the premises were excepted from the operation of that covenant, and there is doubtless a technical breach. *Prichard* v. *Atkinson*, 3 N. H. 335. In considering this matter, however, the referees may, and, so far as we can see, ought to apply the principles that would govern a court of equity, as stated by REDFIELD, J., in *Butler* v. *Gale*, 27 Vt. 739. " Ordinarily," he says, " a court of equity would readily suppose the incumbrance of an existing highway, or railway, or any known and notorious right of a similar character, as a right to draw water from a spring, exercised by another at the time of the conveyance, could not have been intended to be indemnified against, and therefore should have been excepted from the operation of the covenant, and would, no, doubt, so require the parties to treat the deed."

Unless there is something very peculiar about this case, an application of these equitable principles by the referees will doubtless prevent a recovery of anything for this cause, and at the same time save the parties the expense of a proceeding in equity to reform the deed.

                                                              *Report recommitted.*