PETER D. MARSH v. JUSTIN BURT.

*Deed.* Construction of Description of Land bounded upon a
Highway.

Where land is bounded "upon," "on" or "along" a highway, the presumption is that the line extends to the middle of the highway.

A piece of land was described as follows : "Beginning on the west side of the road at the end of a wall, running westerly on said wall and in a straight line therewith to the west line of lot No. 3, thence on said west line to the centre line of said lot No. 3, thence on said centre line to the road, thence on said road to the place of beginning." *Held,* that the west line of the land extended to the middle of the highway.

Another piece was described as follows : "On the south side of the road opposite to the last mentioned piece fenced on two sides, being a ridge of land lying between said road and the centre line of lot No. 3 to extend so far east as to make just five acres." *Held,* that the line extended to the middle of the highway.

Another piece was described as follows : "Opposite to the last mentioned piece on the east side of said road within the fences or wall." *Held,* that inasmuch as it in fact was bounded on the highway though not so described, taken in connection with the fact that the three pieces were all conveyed together, it must be deemed to have been the intention of the grantor to convey to the middle of the highway.

If the language of a deed describing land conveyed, bounded upon a highway, leaves it doubtful whether the grantor intended the line to be in the centre or on the side of the highway, the boundary will be construed to be the centre of the road.

*Tresspass Qua. Clau.*—Plea, the general issue, with notice of special matter, that the close in which &c., was the soil and freehold of the defendant.

The facts of the case sufficiently appear in the opinion of the court.

*Rounds & Adams,* for the defendant.

*Washburn & Marsh,* for the plaintiff.

PIERPOINT J. The questions in this case arise upon the construction of the deed from Bliss Goddard to Rodolphus Burt, through whom the defendant claims. It appears that on the 26th day of February, 1839, Bliss Goddard, who then owned the north

20

half of lot No. 3, conveyed the same to Rodney Clough, except-
ing three several pieces, which are particularly described in the
deed.  On the same day by deed of warranty he conveyed the
same three pieces to Rodolphus Burt.  Clough subsequently
reconveyed to Goddard, and he afterwards sold and conveyed
the same to the plaintiff, so that the defendant's rights as derived
from Rodolphus Burt are to be determined by the deed from God-
dard to said Rodolphus.  There is no substantial difference, how-
ever, between the description of the three pieces as reserved in
Goddard's deed to Clough, and their description in his deed to
Rodolphus Burt.

No question is made but what the plaintiff owns all of the
north half of lot No. 3 that is not conveyed by Goddard's deed
to Burt, nor that the defendant owns all that *was* conveyed by
that deed.

The only question is whether the deed to Burt conveyed the
highway that lies adjoining to or over these several pieces, the
pieces being separated only by the highway.  The plaintiff claim-
ing that the highway is not contained in the description in the
deed, brought this action against the defendant for cutting the
grass upon the highway adjoining his land.

There is not so much difficulty in determining what general
rules are to govern, in deciding questions of this character, as
there is in ascertaining what particular rule, or class of rules,
shall govern a particular case.  This must depend mainly upon
the language used in the deed, and here the shades of difference
are almost infinite.  The result is that the decisions in the dif-
ferent States are not entirely harmonious.  All these rules are
subservient to the one grand principle that is applicable to all
contracts or written instruments, which is, that the intention of the
parties is to govern.  The general principles that govern this
class of cases as recognized in this State are well expressed by
POLAND J., in *Buck* v. *Squiers*, 22 Vt. 484, as follows:  "When
one owns land adjoining to or abutting a highway, the legal pre-
sumption is, in the absence of evidence showing the fact to be
otherwise, that such landowner owns to the middle of the high-
way; so also when one conveys land adjoining to or bounded
upon a highway, (of which the grantor owns the fee,) the law

presumes the party intended to convey to the middle of the highway, and will give the deed such effect unless the language used by the grantor is such as to show a clear and explicit intent to limit the operation of the deed, or grant to the side or outer edge of the highway, and in all cases where general terms are used in a deed, such as " to a highway " or " upon a highway " or " along a highway," the law presumes the parties intended the conveyance to be to the middle or centre line." *Newhall* v. *Ireson*, 8 Cushing 595. These rules are general, and are to be applied to particular cases, according to their various circumcumstances and the language used. They are based upon the intention of the parties, and that general policy that is opposed to the division of farms or large tracts of land by those narrow belts, that, as a general rule, can be valued only for the reason that they are a source of annoyance and contention, and can therefore be used as a means of extortion or the gratification of wrong feelings.

Still parties have the right to make their conveyances as they choose, and when the intention to exclude the highway is clear, explicit and unequivocal, it is the duty of the court to carry out their intention, but when the language is such that by a fair construction the intent is doubtful, it is the duty of the court to resolve that doubt so as to give to the deed the effect of conveying the land to the centre of the highway.

To apply these rules to the case now under consideration ; the description and boundaries of each of the three parcels is given in language wholly different from that used in reference to the others. The seventeen acre farm is bounded as follows : " Beginning on the west side of the road at the end of a wall, running westerly on said wall, and in a straight line therewith to the west line of lot No. 3, thence on said west line to the centre line of said lot No. 3, thence on said centre line to the road, thence on said road to the place of beginning." In this description there are three references to the highway. Two of them by the well established and universally recognized rules of construction apply to the centre or thread of the road ; the third speaks of the west side of the road as the place of beginning at the end of the wall. By this the party has fixed a definite, tangible and

permanent northern boundary to this piece, such a boundary as he could not have in the centre of the road ; and we think it was more for this purpose than with any reference to an intention to exclude the highway that this point was fixed, especially as in terminating the southerly line he carries it to the centre of the highway, and lays the easterly line upon the centre line of the road. The fixing of this boundary in the west line of the road, under the circumstances, is not such an expression of an intention to exclude the road as will control the other boundaries, and place the intention beyond reasonable doubt. If the party had entertained an intention to exclude the road, we think he would have expressed it more clearly in his deed. Taking the whole description together, we think the true legal construction to be put upon it is, that it includes the land to the centre of the highway.

In the case of *Buck* v. *Squiers ub. sup.*, the land was described as bounded on the west by a line running on the easterly side of the highway. The court then held that such language was too explicit to be controlled by the legal construction. If in this case the southerly line had by the terms of the deed terminated at the west line of the road, and had run thence on the west line thereof to the place of beginning, it would then have come within the case of *Buck* v. *Squiers*. As it is, the cases are entirely different.

In the case of *Cole* v. *Haynes et al,*, 22 Vt. 588, the question arose upon the construction of the levy of an execution. ROYCE J. recognized the rules of construction as applicable to deeds to the full extent, but distinguished that case from those where the questions arise upon deeds, on the ground that if the line as measured actually extended to the centre of the road " it was the officer's duty to certify the facts in express terms." As he had not done so the presumption would be that the line did not extend to or run on the centre of the road, and the court could not extend it by construction.

Another piece is described as " on the south side of the road opposite to the last mentioned piece, fenced on two sides, being a ridge of land lying between said road and the centre line of lot No. 3 to extend so far east as to make just five acres." In this description the road is referred to in general terms, without

any thing to indicate that the expression was used as having reference to any other than the centre line. Being on the south side means by legal construction the south side of the centre. " Opposite to" simply means on the opposite side of such line. The clear legal construction of this description is that it conveys the land to the centre of the highway.

The other piece is described as " opposite to the last mentioned piece on the east side of said road within the fences or wall." This description does not necessarily locate the land as adjoining the highway. It is conceded, however, that it does lie upon the road and is bounded by it on two sides, and is opposite to both the other pieces. Taking this piece by itself and judging solely by the language used to describe it, there is some difficulty in saying that the grantor did not intend to make the fences, as they then stood, indicate the exact lines of the land conveyed If this piece had been surrounded on all sides by other lands of the grantor, or by the lands of other individuals, there could be no question that such would be its construction. But in this case the lot described is in fact bounded by the highway. The legal presumption is in favor of extending the grant to the centre of the highway, and such is its operation unless a different intention is clearly expressed in the deed. In determining what the grantor intended by the language used in describing this particular piece, we are to look at the whole deed, and the situation and condition of the whole property conveyed, and construe the language used in reference to this piece, in view of that used in reference to the other pieces, and the general purpose and intention of the grantor as evidenced by the whole taken together.

These three pieces constituted originally but a single piece. They are separated only by the highway. On one side of the highway the land is, as we have seen, conveyed to the centre, and no reason is apparent for reserving the half of the highway lying on the other side of the centre. The probabilities are so strong against such an intention that nothing short of language so clear and explicit as to leave no doubt in the mind would warrant us in giving effect to such an intention.

The language used we think may fairly be said to have been used as referring to the whole lot, as identifying it generally as

the lot that lay on the other side of the road, and for greater certainty it was referred to as the lot that was fenced, and not as intending to define its precise external limits ; and we think, that so far as this question is concerned, the deed is to be construed the same as though the lot intended had been identified as lying on the other side of the road and containing a certain number of acres, or in some other manner, without referring to the fences that surrounded it, and in such case there would be no question that the land would be conveyed to the centre of the highway.

On the whole, we are fully satisfied the true construction to be put upon this deed is that the description of each piece conveys the land to the centre of the adjoining highway.

Judgment of the county court reversed, and the case remanded.