MARY T. ELLIOTT and URIAH ELLIOTT *vs.* E. R. JENKINS.

May Term, 1896.

Present: TAFT, ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

*Equitable Title—Highway Abutters—Evidence.*

The defendant purchased of one Buzzell a lot of land and took possession of the same. Before receiving the deed he arranged with Buzzell to dedicate for highway purposes a strip along one margin, and

accordingly such portion was omitted from the conveyance, the defendant being granted only a right of way thereover. The dedication was made and accepted by the public but for all except highway purposes the defendant continued to occupy the land with the knowledge and acquiesence of the orators and their grantors, more than fifteen years in all. The orators having acquired Buzzell's title sought to enjoin the defendant from all acts of occupation therein except as one of the public. *Held*, that whether the defendant's legal title was perfect or not his equity was superior to the orators' and the injunction should be denied.

The orators having brought the defendant into a court of equity, his equitable title and occupancy under it are available to him in defense, and for this purpose testimony tending to establish the facts above recited was admissible.

A purchaser who takes a conveyance of a public street from one not an abutting owner thereon is bound to inquire respecting the rights of abutting-lot-owners who are apparently exercising such rights to the middle of the street.

BILL IN CHANCERY. Heard on master's report and exceptions thereto at the December Term, 1895, Caledonia County. *Ross*, Chancellor, overruled the exceptions and decreed that the defendant be perpetually enjoined from all use of the disputed land except for highway purposes as one of the public. The defendant appealed.

The evidence upon which the master found the facts recited in the opinion respecting the defendant's equitable title was received against the objection and exception of the orators.

*Bates & May* for the defendant.

The defendant purchased and took possession of the disputed land from Buzzell in May, 1871, and was ever afterwards the equitable owner thereof subject to the rights of the public. It was the defendant who dedicated the land to the public. His possession under his equitable title was open, adverse and continuous for more than fifteen years, beginning before the dedication, and his equity is certainly superior to that of the orators.

*Dunnett & Slack* for the orators.

The defendant could acquire no title in the highway by adverse possession. R. L. 3125.

The evidence as to the arrangement between the defendant and Buzzell was inadmissible.   All negotiations were merged in the deed, and the oratrix had a right to rely upon her record title.  II Pars. Contr. *p. 549; *Hakes* v. *Hotchkiss,* 23 Vt. 231; *Abbott* v. *Choate,* 47 Vt. 53.

START, J.   The ·defendant is the owner of a house and lot situated on the west side of Pleasant Street and north side of Buzzell street in the village of St. Johnsbury.   The lot on the south side of Buzzell street is owned by one Leeth, and the orator's lot is situated at the west end of Buzzell street and the defendant's lot.   Prior to May, 1871, and before Buzzell street was laid out and the land over which it passes dedicated to the public for a street, Luke Buzzell owned all of the land now owned by the orators and the defendant.   In May, 1871, the defendant purchased of Buzzell his lot and that part of the land over which Buzzell street is laid which is in controversy, went into possession of the same, and has ever since been in the possession and occupancy of his lot and of the margin of the street abutting thereon, so far as it is possible to have possession of land within the limits of a street.   After the defendant purchased and went into possession of his lot and the land in dispute, and while Buzzell owned all of the land now owned by the orators, and a lane about twenty feet wide on the south side of the land purchased by the defendant, leading from Pleasant street to the orator's lot, and before the defendant had taken his deed, the defendant agreed with Buzzell to give a sufficient amount of his land, along his southern boundary adjacent to Buzzell's lane, to make, with the lane, a street three rods wide, with the understanding that Buzzell was to give the lane and make the whole into a street.   This agreement and understanding was carried out, and the land thus given is now Buzzell street; and the land in controversy is the margin of the street abutting on the defendant's lot, and a part of the land so given by the defendant.   Subsequently, and before the land so given had

been accepted by the village of St. Johnsbury, Buzzell deeded to the defendant the land so purchased, except that portion which had been set apart for a street. The master refers to the orator's deed, and makes the question of whether they have the record title to the land in dispute depend upon the construction the court gives to the deed. Without construing this deed, or determining who has the record title, we shall, for the purpose of discovering whether the orators are equitably entitled to the relief prayed for, assume that they have such title.

The defendant gave the land in question for a public street, and with the knowledge and acquiescence of the orators and the grantors in their chain of title, has, for more than fifteen years, been in the possession and occupancy of the same, subject only to the rights of the public therein. During this time, he has exercised the rights and control of an abutter, owning the fee in the land to the center of the street; and, at the time the orators took their deed, he was in the possession and exercise of these rights, under circumstances which would indicate to an observer that he was doing so under a claim of right. The orators now seek to dispossess him and prevent a further exercise of these rights by the extraordinary remedy of injunction. Will a court of equity, under these circumstances, by mandatory injunction, dispossess and prevent the defendant from further exercising the rights of an abutter and equitable owner of the fee in the land he purchased and dedicated to the public for a street, after he has been in the exercise of such rights for more than fifteen years, with the knowledge and acquiescence of the orators and grantors in their chain of title? Before doing so, it becomes important to inquire whether the orators' equities are superior to those of the defendant.

It does not appear, that the orators, in purchasing this lot, paid any valuable consideration for the fee of the land over which the street is laid; that they made any inquiry

respecting the defendant's rights or examined any records; that they took their deed, relying upon any deeds, records or representations respecting the ownership of the fee in the land within the limits of the street; or that they relied upon, or anticipated, any beneficial use of the street that was not common to the general public. Before one pays a valuable consideration to secure a conveyance of a public street, from one not an abutter thereon, for the purpose of a beneficial use therein, distinct from the general public, common prudence and fairness require that he inquire respecting the rights of lot owners abutting thereon, who are apparently in the exercise of the rights of abutters, owning the fee in the land to the center of the street. One not an abutter on a street in a city or village has no reasonable ground to anticipate a beneficial use of the street, distinct from the general public, by reason of his owning the fee in the land over which the street is laid. In Kent's Com., vol. 3, 433, it is said by Chancellor Kent that: "The presumption is, that owners of the land on each side go to the center of the road, and they have the exclusive right to the soil, subject to the right of passage in the public." In the same section, he says: "The established inference of law is, that a conveyance of land bounded on a public highway carries with it the fee to the center of the road, as a part and parcel of the grant. The idea of an intention in a grantor to withhold his interest in a road to the middle of it, after parting with all his right and title to the adjoining land, is never to be presumed. It would be contrary to the universal practice." It has been held, that, when a person, owning the fee in the land over which a street passes, and an adjoining lot, conveys the lot, the land to the center of the street is also granted, unless specially reserved. *City of Dubuque* v. *Maloney*, 9 Iowa 450 : 74 Am. Dec. 358; *Low* v. *Tibbetts*, 72 Me. 92 : 39 Am. Rep. 303; *Winter* v. *Peterson*, 24 N. J. L. 524 : 61 Am. Dec. 678; *Paul* v. *Carver*, 26 Penn. St. 223 : 67 Am. Dec. 413.

In cities and villages, it is important that owners of lots abutting on streets have the free and uninterrupted use of the margin of the street for the beneficial use and enjoyment of their lots, subject only to the easement of the public. If property rights in a street can be exercised by a grantor of a lot, he may deprive his grantee of the means of entry into, and exit from, his house at points most convenient, and deprive him of lawns, shade trees, awnings, light, air, and many privileges, that, by the general understanding of the people and extensive and immemorial practice, he is entitled to. All these can be prohibited, to a greater or less extent, by the original owner, if his right of property remains after parting with his lots.

In this State, it is held, that, where one owns land abutting on a highway, the legal presumption, in the absence of evidence showing the fact to be otherwise, is, that such land owner owns to the middle of the highway; and, when one conveys land abutting on a highway in which he owns the fee, the law presumes that he intended to convey to the middle of the highway, and will give the deed such effect, unless the language used by the grantor in his deed shows a clear intent to limit the grantee to the side of the highway. *Buck* v. *Squiers*, 22 Vt. 489; *Marsh* v. *Burt*, 34 Vt. 289; *Morrow* v. *Willard*, 30 Vt. 118; *Maynard* v. *Weeks*, 41 Vt. 619. These principles would, doubtless, be controlling in this case, if, before the defendant took his deed from Buzzell, the village of St. Johnsbury had accepted the land dedicated and worked and opened it for public travel. But, notwithstanding this had not been done, these well recognized rules of construction, the immemorial custom, the general understanding among the people, should be considered by a court of equity, in connection with the acts of the orators and the grantors in their chain of title, in ascertaining what the orators understood and relied upon, and had a right to rely upon, respecting the defendant's rights when they took their deed, and in determining

whether they are equitably entitled to the relief prayed for.

At the time the defendant took his deed, he and Buzzell had agreed to dedicate the land for a street, and had set it apart for that purpose. It is clear that they expected that the village would accept it, and the same would become a public street; but, inasmuch as the land had not been accepted, and the same was not then a public street, they provided in the deed that the defendant should have a right of way over the land they had set apart for, and expected would be, a public street. It would seem that this clause was inserted in the deed for the purpose of securing to the defendant a right of way, in case the village did not accept of the dedicated land, and not with a view of limiting the rights of the defendant as an abutter on the land in case it was accepted and opened as a public street, as the parties then intended and expected it would be. If the land had been accepted for a street, there would have been no occasion for inserting this clause in the deed. The acts of the parties indicate that such was the object and purpose of giving the defendant a right of way over the dedicated land. The defendant, after he took his deed, continued in the possession and occupancy of the land the same as before; and, in 1874, while Buzzell owned the orators' lot, the trustees of the village worked the land for a street and opened it for public travel.

The orators and the grantors in their chain of title have acquiesced in the defendant's occupancy and use of the margin of the street adjacent to his lot for more than fifteen years, without questioning his right to do so, or attempting to restrict his rights as owner of a lot abutting on the street, by reason of the clause in his deed from Buzzell giving him a right of way, and have thereby given a reasonable, practical, equitable, construction to the deed and the contract made between the defendant and Buzzell, whereby the land was dedicated to the public for a street. In *Jackson, ex. dem. Suffern* v. *McConnell*, 19 Wend. 175:

32 Am. Dec. 439, it is held that the acquiesence in a boundary line is evidence of an agreement to abide by it, and, if continued sufficiently long to give title by prescription, is conclusive evidence. It is unnecessary to decide whether the defendant has a clear legal title to the land in question. He has an equitable title, and his equities are superior to those of the orators.

When the orators took a deed of their lot, they knew, or ought to have known, that the land in question had been set apart for a street; that it had been worked and was being used as such; and that the defendant's lot abutted thereon. They might well anticipate that he claimed the right of an abutter, owning the fee to the center of the street; and, doubtless, by inquiry, would have learned that he claimed and had exercised such rights ever since he purchased the land and dedicated it to the public for a street. We think they are chargeable with knowledge of such facts as they might have ascertained by reasonable inquiry. The situation and surroundings were such that they were under a duty to inquire respecting the defendant's rights and the character of his possession and occupancy. The presumption was, that the defendant owned the fee in the land over which the street passed to the center of it; but notwithstanding this presumption, the orators elected to take the deed under which they claim title without making inquiries that were suggested by the situation, surroundings and the character of the defendant's occupancy, and without making the inquiries they naturally would make, if they expected any beneficial use of the street, distinct from the general public. Aside from such use as was common to the public, they could not have reasonably expected to make any use of the title to the land over which the street was laid, unless for the purpose of annoyance to the lot owners. We think the defendant is the equitable owner of the fee in the land in question; that the orators took their title to the street, if any they have, under such

circumstances that it must be held that they knew, or ought to have known, that the defendant was such owner and was, and had been for more than fifteen years, in the exercise and enjoyment of all the rights and privileges of an abutter, owning the fee in the land to the center of the street; that it would be inequitable to dispossess him and prevent him from a further exercise of these rights and privileges; and that the orators are not equitably entitled to the relief prayed for. ·

The orators having brought the defendant into a court of equity, his equitable title and his possession and occupancy under it are available to him in defense; and, for this purpose, the testimony received by the master, subject to the orators' exception, was properly admitted. *Sheldon* v. *Preva*, 57 Vt. 263; *Holmes* v. *Caden*, Id. 111; *Griffith* v. *Abbott*, 56 Vt. 356.

> *The decree of the court of chancery is reversed, and cause remanded, with mandate to enter a decree dismissing the orators' bill, with costs.*