**TEXAS BITULITHIC CO. et al. v. WARWICK et al. (No. 770–4746.)**

Commission of Appeals of Texas, Section B.
April 6, 1927.

**1. Boundaries 20(1)—Deed to city lot, fronting or abutting street, by metes and bounds, carries fee to center of street.**

Deed to city lot, fronting or abutting on street, by metes and bounds, carries fee to the center of the street, unless it contains clause expressly declaring a contrary intention or other declaration equivalent thereto.

**2. Mechanics' liens 57(1)—Mechanic's lien contract for cost of paving street held to create lien on homestead, though deed described it as extending only to street lines; "improvement on homestead."**

Mechanic's lien contract for cost of paving street *held* effective to create lien on homestead as to lot described as extending only to street lines; paving of abutting street being an improvement on the homestead on which contract created valid lien.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Improvement (Of Homestead).]

**3. Boundaries 1—Generally, deeds do not describe property beyond bounds, where grantee has exclusive rights.**

As a rule, deeds do not describe property beyond the bounds where the grantee has exclusive rights.

**4. Mechanics' liens 199—Vendor's lien for price of city lot held to have priority over paving lien.**

Vendor's lien for price of city lot *held* to have priority over paving lien created under contract for paving street in front of homestead property.

Error to Court of Civil Appeals of Tenth Supreme Judicial District.

Suit by the City of Waxahachie and others against V. V. Warwick and others, wherein the Texas Bitulithic Company intervened as plaintiff. Judgment rendered by the district court was affirmed in part and in part reversed and remanded by the Court of Civil Appeals (288 S. W. 516), and plaintiffs bring error. Judgments of the district court and the Court of Civil Appeals reversed, and judgment rendered for plaintiff.

Geo. T. Lee and Dabney, Goggans & Ritchie, all of Dallas, for plaintiffs in error.

J. T. Spencer, of Waxahachie, for defendants in error.

POWELL, P. J. For a partial statement of this case, we quote as follows from the opinion of the Court of Civil Appeals:

"This suit was brought by the city of Waxahachie for the use and benefit of the Texas Bitulithic Company, a corporation, against V. V. Warwick and wife, Minnie E. Warwick, Mrs. Lizzie Trippet and husband, A. Trippet, Ida Cochran and husband, J. A. Cochran, Leila Norton and husband, Fletcher Norton, C. P. Shelby and wife, E. A. Shelby, J. T. Spencer and wife, M. E. Spencer, and J. T. Spencer, agent, on July 25, 1923, to collect and enforce a special assessment evidenced by certificate of special assessment issued by said city to Texas Bitulithic Company for the sum of $495.83 against V. V. Warwick and wife, Minnie E. Warwick, and their property fronting 103.33 feet on the west side of Monroe street in said city, and to establish and foreclose a special assessment lien securing said sum on said property against the interest of all the defendants herein. The

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Texas Bitulithic Company intervened as plaintiff and asked for judgment in its own behalf upon the certificate of special assessment, and also declared upon a mechanic's lien contract on said property, executed by said V. V. Warwick and wife to said company for the cost of the improvements, and sought personal judgment against Warwick and wife and foreclosure of said assessment and contract liens on said property against all the defendants.

"Defendant Warwick owned a tract of land abutting on Monroe street in said city, and used and occupied the same with his family as a home at the time said street was paved and said assessment levied. The defendants other than Warwick and wife had a claim against said property for an unpaid balance of purchase money.

"The controlling issue in this appeal is whether the mechanic's lien contract given by Warwick and wife to the Texas Bitulithic Company was valid and effective to create a lien on the homestead of said Warwick and wife. The field notes of the lot owned by Warwick, so far as applicable, are as follows: .

" 'A part * * * of block 29, town addition * * * according to Phillips & Hawkins' official map of the city of Waxahachie, * * * beginning at the southeast corner of a lot sold by Mrs. Mary Rowan to F. E. Waller, the same being the northeast corner of S. H. Watson and the northeast corner of block 30, T. A., a stake in the west line of Smith street (now Monroe street); thence N. 23¾ E. with the west line of said street 37⅕ vrs. to a stake in the line of said street and in the south line of the right of way of the Fort Worth & New Orleans Railway (now Park street), a stake 30 feet from the center of said railway; thence N. 53½ W. with the west line of said right of way 52⅔ vrs. to stake, * * * thence S. 22½ W. about 42 vrs. to a stake in the south line of said block 29; thence S. 66¾ E. to the south line of said block 29 to the place of beginning.' "

Those who own the vendor's lien against this property asked to be properly protected in the event the district court ordered a foreclosure of the mechanic's lien for paving.

The district court rendered judgment in favor of the paving company for the amount of its debt, and also ordered a foreclosure of its mechanic's lien. The property was ordered sold, and the judgment further provided that, if the proceeds of the sale were sufficient to pay both the paving lien and the vendor's lien, then the paving company was to receive its money, and the remainder was to be held in the registry of the court subject to the rights of the holders of the vendor's lien. On the other hand, the district court provided in its judgment that, if the proceeds of the sale were not sufficient to pay both liens, then the money was to be prorated between the lienholders as therein stated. In view of the fact that we do not think the prorating provision of the judgment was correct, for reasons which we shall hereafter state, we do not further outline the details of this provision of the judgment.

293 S.W.—11

The Court of Civil Appeals entered the following judgment in this case:

"There is no complaint of the personal judgment rendered by the trial court in favor of the Texas Bitulithic Company against V. V. Warwick and the same is here affirmed, but the judgment foreclosing a lien to secure the same on said lot is reversed and such foreclosure denied. The Walker heirs did not ask either a personal judgment against Warwick for their debt or a foreclosure of their vendor's lien securing the same, but merely asked in event the property was sold that they be protected in the payment of their debt out of the proceeds. Since the judgment of foreclosure was rendered solely at the instance of plaintiffs and the same has been set aside, the cause as between the Walker heirs and Warwick and wife is reversed and remanded for such further proceedings as may be necessary or proper in the premises." See 288 S. W. 516.

The Court of Civil Appeals, in a very brief way, correctly states the contentions of the parties hereto with reference to the controlling issue before us. In this connection, that court says:

"Plaintiffs contend that, because the field notes under which Warwick held his lot show that the same fronts or abuts on Monroe street, that the court was justified in presuming that he owned the fee in the street to the center thereof, subject, of course, to the use thereof by the public as a highway. The defendants contend that said field notes limit the land owned and held by Warwick to the west line of Monroe street, and rebut any presumption that his land extended beyond said line and included any part of said street."

[1] We are of the view that, upon this particular point, the district court entered a correct judgment. The writ of error was granted in this case upon the fourth, fifth, and seventh assignments of error therein. Said assignments read as follows:

"Fourth assignment of error: The Court of Civil Appeals erred in holding that the contract for paving Monroe street in front of property of the appellants V. V. Warwick and wife, which was duly executed, acknowledged, and delivered by them to the Texas Bitulithic Company, and purporting to fix a valid lien on said property, did not create a valid lien thereon.

"Fifth assignment of error: The Court of Civil Appeals erred in failing and refusing to hold that the paving of Monroe street in the city of Waxahachie by the Texas Bitulithic Company was an improvement of and on the homestead of the appellants V. V. Warwick and wife, upon which said contract created a valid lien.

"Seventh assignment of error: The Court of Civil Appeals erred in denying a foreclosure of the contract lien granted by the appellants V. V. Warwick and wife to the appellee, Texas Bitulithic Company, for the paving of Monroe street in front of their property, even though the property was homestead, since the fee to said property went to the center of said street,

and said contract granted and fixed a valid lien thereon."

We think aforesaid assignments should be sustained.

The common-law rule in this connection is stated by Chancellor Kent in his Third Commentaries, p. 432, as follows:

"The established inference of law is that a conveyance of land bounded on a public highway carries with it the fee to the center of the road as part and parcel of the grant. The idea of an intention in the grantor to withhold his interest in a road to the middle of it after departing with all his right and title in the adjoining land is never to be presumed."

The reasons for the rule of the common law are stated in 9 C. J. p. 197, as follows:

"Briefly stated, the reasons in support of the rule that the fee extends to the center of the highway may be outlined as follows: (1) The absence of any purpose to be served in the retention by the grantor of a narrow strip of land along the boundaries of the land conveyed, or the absence of any practical use to him for the strip of land. (2) The immediate interest of the vendee therein and its direct and substantial value to him. (3) Grounds of public convenience and the prevention of disputes as to the precise boundaries of property. (4) The embarrassment to alienation and the improvement of property, which it consists with public policy to favor, if a different rule prevailed. (5) *The concern of the state itself as to who shall determine and pay for improvements.* (6) And in conclusion it has been said: 'If no other reason could be assigned in support of this rule of construction, the general understanding of the people, and the extensive and immemorial practice of claiming and acquiescing in such rights, ought to have great weight.'" (Italics ours.)

The Supreme Court of Texas early recognized this common-law rule. In the case of Mitchell v. Bass, 26 Tex. 372, Chief Justice Wheeler said:

"Another question is suggested by the examination of the record, to which, as the case will be remanded for a new trial, it is thought proper to call the attention of the parties and their counsel. The original grants of labors 1 and 2, call for the 'national road' as the boundary between them. The plaintiff claims that the space designated for the road remained vacant public land after the granting of the labors, and was subject to be appropriated by his certificate and patent. The controversy has been as to the existence of a vacancy between the labors. But if it be conceded that there was a space designated for a public highway, which has ceased to be used as such, it may be a question whether the space so designated became vacant upon its disuse by the public. The established doctrine of the common law is that a conveyance of land bounded on a public highway carries with it the fee to the center of the road as part and parcel of the grant. Such is the legal construction of the grant, unless the inference that it was so intended is rebutted by the express terms of the grant. The owners of the land on each side go to the center of the road, and they have the exclusive right to the soil, subject to the right of passage in the public. Upon the discontinuance of the highway, the soil and freehold revert to the owner of the land."

The language just quoted has been frequently followed by our Courts of Civil Appeals. See Lewis v. Roach-Manigan Paving Co., 184 S. W. 680; Waples-Painter Co. v. Ross, 141 S. W. 1027; Bond v. Texas & Pacific Railway Co., 15 Tex. Civ. App. 281, 39 S. W. 978; Emerson v. Bedford, 21 Tex. Civ. App. 262, 51 S. W. 889; Cannon v. Healy Construction Co., 242 S. W. 526; Wiess v. Goodhue, 46 Tex. Civ. App. 142, 102 S. W. 797.

The Court of Civil Appeals, in the instant case, makes an effort to distinguish this case from other Texas cases, on the ground that the lien herein describes the lot by metes and bounds, and runs along and with Monroe street. In other words, the contention is that, since the lien does not expressly call to the center of the street, it must be assumed that the lien was not to extend to property beyond the line of Monroe street. But, a careful review of the Texas cases will show counsel for plaintiff in error to be correct in their statement as follows:

"As seen by these cases, the Texas courts hold the fee passes under various assortments of descriptions—some by lot and block number of a dedicated plat and subdivision; some by lot numbers on an undedicated street according to a mere plat in the deed, by a description calling for a country road in unplatted and undedicated section, and by a description by metes and bounds which did not include within its limits the highway in controversy."

It seems that the Court of Civil Appeals, in the case at bar, would have reached a different conclusion had this lot been referred to by lot and block number and not described by metes and bounds which merely called for the line of Monroe street. Counsel for defendants in error, in oral argument, said this was the true test. We submit that this view is erroneous. As already shown, we think the Courts of Civil Appeals in Texas have held differently. In 9 C. J. p. 201, we find the contrary doctrine stated as follows:

"The presumption of an intent to convey title to the center of a street or highway is not overcome by the fact the land is described by metes and bounds, and that the distances stated in the description of the deed do not extend to the center of the street."

We think the weight of the better reasoned authorities in other jurisdictions is contrary to the decision of the Court of Civil Appeals herein. We are of the view that the correct rule was referred to by Chief Justice Wheeler in the Bass Case, supra, when he said that title extends to the center of the street unless the *express* terms of the grant show a contrary intention. A very thoroughly considered case upon this point

is that of Bowers v. Railway Co. by the Supreme Court of Kansas reported in 119 Kan. 202, 237 P. 913, 42 A. L. R. 229. In that case, the court said:

"This court has approved the doctrine that to exclude half of the highway from a conveyance the grantor must make his purpose to exclude clear by express declaration, or equivalent of express declaration, in the instrument."

In the case of Tousley v. Galena M. & S. Co., 24 Kan. 328, the opinion was written by Justice Brewer, later of the United States Supreme Court. In the Galena Case he held that, unless the road or street be expressly excluded, the grantee takes to the center thereof.

In the Galena Case, the court quoted from the dissenting opinion of Justice Redfield in the case of Buck v. Squiers, 22 Vt. 484. We quote from the latter opinion, as follows:

"It is, as I understand the law, to prevent the occurrence of just such contingencies as these that, in the leading, best-reasoned, and best-considered cases upon this subject, it is laid down and fully established that courts will always extend the boundaries of land, deeded as extending to and along the sides of highways and fresh-water streams, not navigable, to the middle of such streams and highways, if it can be done without manifest violence to the words used in the conveyance. And to have this rule of the least practical importance to cure the evil, which it is adapted to remedy, it must be applied to every case, where there is not expressed an *evident* and *manifest* intention to the contrary—one from which no rational construction can escape."

Perhaps the most recent utterance upon this question is by the Supreme Court of Tennessee in the case of City of Nashville v. Lawrence, 284 S. W. 882. In that case, the facts before the court are stated correctly in one of the briefs on file here, as follows:

"In that case the court was called on to construe two descriptions in two separate deeds, reading as follows:

" 'First description: Beginning at a point on the northwest corner of Broad street and a new street 35 feet wide (a continuation of Walnut street) and running thence westwardly *along the north side of said Broad street* 80 feet to a point; thence at right angles northwardly 211.4 feet to a point; thence at right angles eastwardly 80 feet to said new street; *thence along the west side of said new street* 211.4 feet to the beginning.'

"The description in the second deed, known as the Whitworth deed, is as follows: 'Beginning at a point on the *north side of Broad street* at its intersection with the *east side of a continuation of Walnut street;* thence eastwardly along the north side of said Broad street 75 feet to corner of a lot said Whitworth purchased from W. D. Taber; thence northwardly with said Whitworth line 211½ feet; thence westwardly and nearly parallel to Broad street 75 feet to the margin of the new or Walnut street; thence southwardly 211½ feet to the point of beginning.'

"It will be carefully noted that the description

in these two deeds is identically the character of description in the deed under consideration, in these particulars, to wit: The deeds in all three instances call for points on the side lines of the streets, and further call for such side lines of the streets in the metes and bounds."

Upon such state of facts, the Tennessee court held:

"After carefully considering these deeds, in connection with the circumstances surrounding their execution, we are of the opinion that the grantor did not intend to reserve the fee in said street, and that such intention does not appear with sufficient clearness to overcome the legal presumption that the grantees took to the middle of the street."

Perhaps one of the leading cases in the United States upon this point is the case of Paul v. Carver, 26 Pa. 223, 67 Am. Dec. 413. We quote from the court as follows:

"There is no doubt whatever as to the existence of the general rule; but it is thought by the plaintiff in error that, where the deed calls for a particular side of a street, the case is taken out of the rule. In our opinion this is a circumstance entirely too insignificant to produce a result so inconvenient and so contrary to the practice of the people. * * * A rule founded upon policy, and tending to guard against inconveniences of the most alarming character ought not to be frittered away by distinctions founded on differences in phraseology, which might readily escape attention. * * * Even where a grant described the land as 'beginning on the westerly side of the county road,' 'thence running northerly, touching the said westerly side of said road forty rods,' this description was held to be insufficient to control the rule of law which extends the title to the center of the road. Johnson v. Anderson, 18 Maine, 76. The case last cited disposes of the identical question now before us, and we adopt it as a sound exposition of the law."

We quote as follows from the case of Marsh v. Burt, 34 Vt. 289:

"Parties have the right to make their conveyances as they choose, and when the intention to exclude the highway is clear, explicit and unequivocal, it is the duty of the court to carry out their intention, *but when the language is such that by a fair construction the intent is doubtful, it is the duty of the court to resolve that doubt so as to give to the deed the effect of conveying the land to the center of the highway.*" (Italics ours.)

In the application for writ of error and accompanying briefs, counsel for plaintiff in error cite cases from New Jersey, Vermont, Maine, Massachusetts, Connecticut, Wisconsin, and Kansas, directly in point, and which we think sustain our views.

It is difficult for us to conceive of any good reason for the other rule. In the first place, we doubt if any one could sell a residence lot in a city or town if the grantee had any idea that the grantor was retaining the sidewalk and street in front of the lot. A lot would

be practically valueless unless it carried with it the right to use the sidewalk and street abutting thereon. Therefore we think the courts are exactly right when they say that a deed does carry the property to the center of the adjoining street unless such deed contains a clause which expressly declares the contrary intention or contains some other declaration equivalent to such an express declaration. In other words, we think that the purchaser of a lot should be put definitely upon notice that he has no rights in the sidewalk and street in front of his property, if that is the intention of the grantor.

[2] What we have said with reference to the purchaser of a lot applies with equal force to the rights of those who improve a man's property, as was done in the case at bar. Reflections of equity surrounding the facts of the instant case are all in favor of the enforcement of the mechanic's lien. If the owner of a homestead feels that he is unable to enjoy the benefits of paving in front of his property, he may, under our Texas law, refrain from executing a mechanic's lien for the improvement of his homestead in that respect. If he does not expect to pay for such improvement, he should refrain from executing any such lien. On the other hand, the paving company could have left off its paving in front of this particular property. Such is the practice where no lien is given on the homestead. So far as the record in this case goes, the paving company, in utter good faith, took this mechanic's lien on this property and improved it. We do not believe the courts should encourage any one to enjoy the benefits of another's effort and not pay for it, and especially where the improvement was provided because of reliance upon an instrument executed by the owners of the homestead.

We think the only proper rule of law is that title to a lot extends across the sidewalk and to the center of the adjoining street, unless the grantor expressly, or by necessary implication, evidences a contrary intention. We expect the day to come when all the courts of other jurisdictions will come to this view.

[3] As a rule, deeds do not describe property beyond the bounds where the grantee has *exclusive rights*. For that reason, no mention is generally made of adjoining sidewalks and streets, where the public generally has concurrent rights and control. The use of adjoining sidewalks and streets is so essentially connected with the lot itself that grantors have deemed it unnecessary, as a rule, to mention them as being included within the terms of the deed.

[4] Plaintiff in error seriously contends that the district court was correct in prorating the proceeds of the sale of this property under the foreclosure ordered between the holders of the prior vendor's lien and the paving lien; but its counsel admit that such contention is in the face of the very recent decision by Section A of the Commission of Appeals in the case of State Trust Co. v. Morrison et al., 282 S. W. 214. It is conceded that the facts in the two cases are essentially identical. The Court of Civil Appeals, in the instant case, did not pass upon this question. It was unnecessary to do so in view of its other holding.

In the Morrison Case, the district court ordered the property sold and the proceeds to satisfy the vendor's lien first, and then next to be applied to the paving lien. The Court of Civil Appeals, in that case, prorated the proceeds of the sale among the lienholders. The Supreme Court affirmed the judgment of the district court aforesaid. Since this matter has been so recently decided, we do not think it necessary to further discuss it here. We can add nothing to Judge Bishop's opinion in the Morrison Case. Therefore this assignment must be overruled.

As we view it, the paving companies can protect themselves against prior liens. Before paving in front of any home, they can ascertain the lien indebtedness already against the property, and, if they think the value of the home insufficient to protect both liens, they need not do the paving.

The personal judgment in favor of plaintiff in error against Warwick and wife was affirmed by the Court of Civil Appeals. It is final of course. There is no complaint here in this connection.

We think that portion of the judgment of the district court awarding a foreclosure of the paving lien was correct, and that it should be affirmed. But we are of the view that the district court erroneously ordered a prorating of the proceeds of the sale between the lienholders, and that the prior vendor's lien must first be satisfied before the paving lien can be paid.

Therefore we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and that judgment be rendered by the Supreme Court foreclosing the mechanic's lien in favor of plaintiff in error for the amount of the personal judgment rendered as aforesaid in favor of the latter as against Warwick and wife, but such foreclosure to be subject to the vendor's lien aforesaid. We further recommend that the costs in all the courts be assessed against Warwick and wife.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.