**PEEPLES et ux. v. SMITH BROS., Inc.**

**No. 1426.**

Court of Civil Appeals of Texas. Waco.

Oct. 12, 1933.

Rehearing Denied Dec. 14, 1933.

Haynes Shannon, of Navasota, for plaintiffs in error.

Lewis & Lewis, of Navasota, for defendant in error.

ALEXANDER, Justice.

Dr. D. L. Peeples and wife executed and delivered to Smith Brothers, Inc., a mechanic's lien contract on their homestead in the city of Navasota to secure the payment of a part of the costs of paving a certain street upon which said property abutted. Smith Brothers, Inc., sued to recover its debt and to foreclose its lien. Judgment was entered for the plaintiff as prayed, and the defendants sued out this writ of error.

The parties will be referred to as in the trial court. It is admitted that the property in question constituted the homestead of defendants and that said defendants executed the mechanic's lien contract in the manner and form provided for in Constitution, art. 16, § 50, and Revised Statutes, art. 5460, and that the plaintiff constructed the paving according to the contract. It is contended by the defendants, however, that they did not own the street upon which the paving was placed, that said street constituted no part of their homestead, and that their homestead could not thus be mortgaged or incumbered to secure the payment of the costs of improving property other than their homestead.

The mechanic's lien contract covered lots 5 and 6, block 8 of I. M. Camp's addition to the city of Navasota. These lots abut on La Salle or Williams street, which is the street upon which the improvements were placed. Said addition was platted and the map or plat thereof, dated January 2, 1885, was recorded in the deed records of Grimes county on August 11, 1885. The streets of said addition, including La Salle or Williams street, were dedicated to the use of the public as streets. Such dedication was accepted by the city and the streets have been maintained by the city and used by the public continuously since said dedication. The lots in said addition were laid out and have always been sold in reference to said streets. In 1891 I. M. Camp conveyed the lots in question to C. W. Stewart, the property being described by lot and block number in said addition. In January, 1893, C. W. Stewart conveyed said property by the same description to D. L. Peeples, who has owned the property continuously since such date.

It was held in the case of Texas Bitulithic Co. v. Warwick (Tex. Com. App.) 293 S. W. 160, that where property abuts on or is bounded by a public street, a conveyance thereof carries with it a fee in the land to the center of the street. This, we think, is particularly true where a prior grantor in the chain of title, who owned the property out of which the addition was carved, laid out and dedicated the streets to public use and platted the lots with reference to such streets and afterwards conveyed the lots by reference to such plat, as was done in this case. Waples-Painter Co. v. Ross (Tex. Civ. App.) 141 S. W. 1027, 1028; Bond v. T. & P. Ry. Co., 15 Tex. Civ. App. 281, 39 S. W. 978–980; Emerson v. Bedford, 21 Tex. Civ. App. 262, 51 S. W. 889; Wiess v. Goodhue, 46 Tex. Civ. App. 142, 102 S. W. 793–797; Lewis v. Roach Manigan Paving

Co. (Tex. Civ. App.) 184 S. W. 680, 681. We think the evidence was sufficient to show that the defendants owned a fee in the land to the center of the street. They therefore had a right to incumber their homestead for the purpose of improving such street. Texas Bitulithic Co. v. Warwick, supra.

The defendants further contend that notwithstanding they may have acquired title to the fee in said street by such conveyance, such title was divested out of them and vested in the city by article II, section 3, of the city charter adopted in March, 1922, which section is as follows: "Section 3. Property Rights of City.—All real estate owned in fee simple title, or held by lease, sufferance, easement or otherwise, and all public buildings, fire stations, parks, streets, avenues, and alleys and all property, whether real or personal, of whatever kind, character or description, now owned or controlled by the City of Navasota, shall vest in, inure to, remain and be the property of said City of Navasota." We do not think that by the above provision it was intended to divest the title to real property out of private owners and to vest same in the city, but regardless of what may have been the intention of those adopting such charter, the title to real property cannot thus be taken from private owners and applied to public use without compensation and without the consent of the owner thereof. Const. art. 1, § 17.

The judgment of the trial court is affirmed.