LADUE CONTRACTING COMPANY, a corporation, (Plaintiff) Appellant,

v.

LAND DEVELOPMENT COMPANY, a corporation et al., Defendants.

Warren B. Nelson and Betty Lou Nelson, his wife; Clarence C. Cremer and Sandra H. Cremer, his wife; Clyde Mosley and Alice Mosley, his wife; Howard F. Willis and Dorothy J. Willis, his wife; Frank B. Summers, Jr., and Myrtis Summers, his wife; Norman B. McLeod and Gloria Zelle McLeod, his wife; Kedric M. Lynch and Mary Anne Lynch, his wife; Arthur A. Marshall and Lucille F. Marshall, his wife; Walter W. Groves and Louise Groves, his wife; Gilbert R. Palen and Lucille Palen, his wife; Gilbert Glendening and Alice E. Glendening, his wife; and Allen L. Butcher and Harryetta M. Butcher, his wife, (Defendants) Respondents.

No. 30453.

St. Louis Court of Appeals.

Missouri.

July 5, 1960.

Motion for Rehearing or for Transfer to Supreme Court Denied Sept. 6, 1960.

Harry S. Gleick, Gleick & Strauss, St. Louis, for appellant.

Herbert W. Ziercher, Erwin Tzinberg, Ziercher, Tzinberg, Human & Michenfelder, Clayton, Jerome W. Sidel, Robert A. Hamilton, St. Louis, for respondents.

SAM C. BLAIR, Special Judge.

This is an action by Ladue Contracting Company, a subcontractor, to recover from Land Development Company, the general contractor, the price of labor and materials and to enforce a mechanic's lien against real estate consisting of twelve contiguous

residential lots on Jewel Avenue in Glendening, a subdivision of Kirkwood. There are six residences on each side of Jewel Avenue. The avenue ends in a "circular turn-around." The avenue and the "circular turn-around" are for the egress and ingress of the owners of the residences and real estate involved here. The mechanic's lien the subcontractor, Ladue Contracting Company, seeks is one against these "buildings," and against the "appurtenances, improvements and land" to which it states it contributed labor and materials. The account it pleads is as follows: "For grading and paving Jewel Avenue for Land Development Company, Inc. (general contractor) and for grading and building twelve (12) driveways and grading and building a 6" stone circular turn-around." Included in the petition are the individual amounts charged for the items of the account, viz., jetting sanitary sewer, $35.43; grading street, $727.50; curb and gutter, $1,283.20; paving Jewel Avenue, $2,807.04; City of Kirkwood inspection fees on street, $10.50; 12 driveways (including grading, base, and surface), $1,288.78; circular turn-around, $886.23; total $7,038.68. The account is credited with a payment of $2,989.-25, leaving a balance of $4,049.43.

■ Ladue Contracting Company obtained judgment by default against Land Development Company for the amount prayed, with interest. The owners of the real estate filed motions to dismiss the petition on the ground that it failed to state a claim upon which relief could be granted against them. The trial court granted these motions. All motions and all rulings were general. In consequence, the record does not disclose the grounds on which the motions were presented or granted. The court overruled Ladue Contracting Company's motions to set aside these dismissals and for a new trial and entered judgment for the owners of the real estate. Ladue appeals. The petition is quite lengthy. Our view of the case requires no general summarization of the pleading's allegations, but only reference to the portions made relevant by the questions on this appeal.

As observed, Ladue seeks for its work and materials enforcement of one lien against all "buildings, appurtenances, improvements and land" described in the petition. The property described is "Twelve (12) contiguous lots numbered one (1) to twelve (12), inclusive, of Glendening, according to the plat thereof recorded in Plat Book 49, page 20, of the St. Louis County records, said lots now being improved by residence buildings numbered respectively 603, 609, 615, 619, 625, 629, 628, 624, 618, 614, 608, and 602 Jewel Avenue, in the City of Kirkwood." This is followed by the averment "That the twelve lots hereinbefore described are contiguous; that the twelve residence buildings aforesaid are contiguous buildings erected and situated upon contiguous lots; that the buildings and lots hereinbefore described to which plaintiff delivered work and materials and into which plaintiff's work and materials entered are and were contiguous buildings erected upon contiguous lots."

Section 429.040, V.A.M.S., authorizes the filing of one lien for lienable items on contiguous lots when the work is done or the materials are furnished under one general contract. The owners claim that this statute cannot apply "for the reasons that Appellant failed to allege that its work was part of the contract for the erection of the buildings." In this they are in error. Paragraphs 9 and 37 of the petition contain averments that Land Development Company was the "original contractors for the erection of said buildings, appurtenances and improvements" and "that said buildings, *appurtenances, and improvements* were erected under one general contract." They argue that "the petition and account show the construction of the street, curb and driveways and then, (in paragraph 7,) states that all this was done under one arrangement" and that it is not "alleged that the one arrangement was in any way connected with the contract for the construction of the improvements" on·

the lots. Obviously this overlooks the allegations that Land Development Company was the general contractor for the erection of *all* of the buildings, appurtenances, and improvements, and that *all* were erected under one general contract. Naturally, those allegations embraced all work done by the general contractor and by the subcontractor for him. Ladue cannot be pushed aside and denied a lien merely because its subcontract with the general contractor was for only a part and not for all of the construction called for by that general contract. Henry v. Plitt, 84 Mo. 237, 239–241; McDermott v. Claas, 104 Mo. 14, 15 S.W. 995, 997. Certainly this must be true for Ladue alleges, paragraph 5, that its material and work, describing them as we do above, were furnished "to be used in and * * * were, in fact, used in the construction of said buildings, appurtenances and improvements." Under any fair construction, this language must mean that the items in Ladue's account were furnished, under its subcontract, to the general contractor, and that its work and materials became a part of the entire contract and construction.

The owners argue that Section 429.040, supra, cannot apply "for the reason that, at the time the lien herein was filed, the twelve lots involved were owned by twelve separate persons." They overlook paragraph 8 of the petition stating that on July 29, 1952, the lien was duly filed with the proper authority and "was intended to be a mechanic's lien against the buildings, appurtenances, improvements and land *so owned*" by these present owners. Moreover, paragraph 2 of the petition, introductory of all allegations, states that these present owners, at all times mentioned in the petition, "were, and still are the owners" of the real estate we have described. Added to this, paragraph 10 of the petition states "That at the time of the commencement of the construction of said buildings, appurtenances, and improvements, at the commencement of the furnishing of said material and labor, and at and during the accruing of said account" these present owners "were the owners of said buildings, appurtenances, improvements and land, and that they are now the owners thereof." Whatever the facts, the petition before us does *not allege any individual interest of any owner in any individual lot.* Quite the contrary, it clearly alleges that the present owners, at all relevant times, owned all of the real estate the petition describes. There is no slightest attempt to assign, by any description or averment, any single lot to any one owner or to any group of owners less than all. We must take the petition as we find it without conjecturing about facts which might exist outside of this record. And we purposely notice here that the arguments of the owners just discussed embrace all of the objections put forward here to the failure of Ladue to seek separate liens instead of the single lien it seeks under Section 429.040, supra.

The owners assert that the petition does not allege that the items embraced in the account entered into construction *on* the lots and that we must hold that all items of the account, except the driveways admittedly *on* the lots, are nonlienable. In this they are in error. In paragraph 5, the pleaded account states that all material and work were furnished and done "for the twelve one-story residence buildings, garages, sheds, fences, sidewalks, appurtences, and improvements * * * *situated upon the above described real estate."* In paragraph 3 it is stated: "That the twelve lots hereinbefore described are contiguous; that the twelve residence buildings aforesaid are contiguous buildings erected and situated upon contiguous lots; that the buildings and *lots* hereinbefore described *to which plaintiff delivered work and materials and into which plaintiff's work and materials entered* are and were contiguous buildings erected upon contiguous lots." While it might have been possible to employ language even more explicit, the language employed is, in our view, explicit enough to allege as a fact that all of the work done and all of the materials fur-

nished entered into construction on the lots, and not elsewhere. And there is nothing in the petition, express or otherwise, supporting any other construction of these averments.

Construing this petition, we have borne in mind that none of the owners moved for a more definite statement as each was entitled to do. Section 509.310, V.A.M.S. All attacked it by general motions, asserting broadly and only that it did not state a claim against them upon which relief could be granted. Section 509.300, V.A.M.S. In these circumstances, our duty is to assume all allegations relevant here to be true and to construe all of them broadly and most favorably to Ladue Contracting Company. New v. South Daviess County Drainage District of Daviess County, 240 Mo.App. 807, 220 S.W.2d 79, 82 [3, 4]; Martin v. Potashnick, 358 Mo. 833, 217 S.W.2d 379, 380 [1]. A motion to dismiss, just as the old demurrer, based on the general ground that the petition fails to state a claim upon which relief can be granted, is confined to that objection only, and it does not reach any defect, imperfection, or uncertainty in the pleading, provided a cause of action may be implied from its allegations by fair and reasonable intendment. If the facts essential to a recovery are pleaded, however defectively or inartificially, a general motion to dismiss will not lie. Webster v. Sterling Finance Co., 351 Mo. 754, 173 S.W.2d 928, 930 [1-3]; Tressler v. Whitsett, 321 Mo. 849, 12 S.W.2d 723, 725 [1]; Heitzeberg v. Von Hoffmann Press, 340 Mo. 265, 100 S.W.2d 307, 310; Eads v. Gains, 58 Mo.App. 586, 594; State ex rel. Burris v. Edmundson, 71 Mo.App. 172, 177; Cole v. Barron, 8 Mo.App. 509, 511; Stone v. Taylor, 72 Mo.App. 482, 485. Judging the facts stated in the petition, and all fair and reasonable intendments allowable, and measuring all in the light of the foregoing rules, we think, as against the motions to dismiss, we must hold that the petition does, by its allegations and intendments, allege facts

sufficient to overcome all of the owners' objections we have discussed.

The parties are in agreement that the driveways on the lots could be lienable. The difference between them is whether the remaining items of the account can be lienable. The owners argue that there is no right to any lien for grading and paving Jewel Avenue and its circular turn-around, or for the curbs, gutters, and sanitary sewer jetting. They assert that construction of this kind is beyond the scope of Section 429.010, V.A.M.S., and that declaring it to be lienable would be an unwarranted extension of the statute's terms. This statute provides: "Every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material, * * * for any building, erection or improvements upon land, * * * under or by virtue of any contract with the owner or proprietor thereof, or his * * * contractor or subcontractor, * * * shall have for his work or labor done, or materials, * * * a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated, * * *."

Under this statute, as is well known, liens have been granted, by liberal construction, on a great variety of improvements. Illustrative and relevant here are Pullis v. Hoffman, 28 Mo.App. 666, 670; Southern Electrical Supply Co. v. Rolla Electric Light & Power Co., 75 Mo.App. 622, 626-630; and Feeny v. Rothbaum, 155 Mo.App. 331, 137 S.W. 82, 83. In Pullis, a lien was granted for illuminating tiling laid from the front line of a building four feet into a public sidewalk "for the purpose of lighting an area under a sidewalk and with it the cellar of the building," "although" the court said "the fee may be in the city." In Feeny, a lien was recognized for a pipe called a "lead in the street" used in connecting a building with water, gas, and sewer pipes in the public street. In Southern Electric Supply Co., supra, a lien was granted against an electric power plant and the lot

on which it was situated for wires attached to its dynamo in the plant and then "strung (therefrom) upon poles situate on the streets of the city" on the theory that the transmission system was "an appurtenance to the lot."

Much that is relevant to our question, or so it seems to us, is found in decisions dealing with liens for work and materials entering into construction of sidewalks. Prior to 1909, our laws did not expressly provide for a lien for mechanics and other persons furnishing work or material for sidewalks. Section 429.010, V.A.M.S. Notwithstanding this omission, the courts granted liens on sidewalks when they were constructed under the general contract by which the buildings were erected. In Henry v. Plitt, supra, 84 Mo. 237, loc. cit. 241, the court ruled, "Under our statute, which gives a lien for 'buildings,' 'erections,' and 'improvements' upon land, * * * it has been the practice to adjudge a lien for fences and walks on the premises when they have been constructed as appurtenant to the buildings, and at the same time. They have been so adjudged in other states under statutes more limited in the words employed than our own."

In Dugan Cut Stone Co. v. Gray, 114 Mo. 497, 21 S.W. 854, 855, a mechanic's lien was enforced against a lot and building thereon for stone furnished for and used in the construction of a sidewalk "laid partly upon the street adjoining the building, and partly upon the lot." The court cited Pullis v. Hoffman, supra, McDermott v. Claas, supra, Beatty v. Parker, 141 Mass. 523, 6 N.E. 754, and Henry v. Plitt, supra, and said:

"Following out these decisions, the conclusion is necessarily reached that this plaintiff was entitled to a lien upon the lot for the stone used in the construction of these sidewalks and areas, a part of which was on the lot and a part on the street, and all of which were built under one contract. The statute gives a lien for materials used

for making any improvements upon land, which lien extends to such improvement and the lot or land upon which the same is made. * * * A sidewalk upon a street, adjoining a lot and building, in a town or city, is essential to the convenient and comfortable use of the premises. While the walk is on the public street, and is open to the general use of the public, it is appurtenant to the lot, and the owner has in it a special interest which the public does not enjoy. Under a New York statute giving a lien upon the lot, building, and appurtenances it was held that the word 'appurtenances' covered the making of a sidewalk in front of the premises. * * * While less than one tenth of the stone furnished by plaintiff was laid upon the lot itself, such part was intended for, and was in fact used, to make an improvement upon the lot, and was therefore lienable. Henry v. Plitt, supra. As has been seen, the stone used in constructing the sidewalk upon the street adjoining the lot was an improvement of the lot, and, though not placed upon it, was appurtenant to it. The material for the whole improvement, then, having been purchased under one entire contract, and having been put upon the lot and the adjoining street, was for an improvement upon the lot, within the true spirit and meaning of the statute."

In McDermott v. Claas, 15 S.W. 995, loc. cit. 997, a lien was enforced for a brick sidewalk "along and adjoining" a lot and laid in a public street. The court said:

"Where walks and fences are constructed under 'one entire contract,' the mechanic has a lien for the labor and materials expended on them. * * Appellant owned the land to the center of the street on which his property abutted, subject to the easement in favor of the public. * * * Appellant had the walk constructed along and adjoining his lot, either voluntarily or

by direction of the municipal authorities. * * * The whole job was let as 'one entire contract' to Fritz, and the brick-work, * * * was sublet to plaintiff. The construction of the·sidewalk was included in the contract for the construction of the building. The walk was constructed for the house by the direction of the owner, and it must therefore be regarded as appurtenant to the house. In that case the labor and materials expended in its construction are lienable."

The owners try to destroy the force of these rulings by arguing that the enactment in 1909 of Section 429.020, V.A.M.S., granting a lien on sidewalks, denotes a purpose by the general assembly to repudiate these rulings and to exclude from lienability all construction not on lots or merely along or adjoining lots, except sidewalks, and hence they claim that Ladue's work and materials are not lienable. This argument as to Ladue is grounded on the assumption that Ladue's work and material did not go into appurtenances and improvement on the lots. This argument cannot be adopted for two reasons. First, the petition alleges that Ladue's work was all done on the lots and not elsewhere and all of its materials were used in that work. Even if the petition alleged that Ladue's work and materials went into an improvement partly on and partly off, or along and adjoining, the lots, that circumstance would be immaterial under the decisions quoted. Second, still in force and effect are the principles declared in the decisions we have quoted allowing liens for sidewalks on, partly on and partly off, and along and adjoining lots, if constructed, as here, under an entire contract for the building, erections, appurtenances, and improvements. Feeny v. Rothbaum, supra. Section 429.020, supra, was enacted, in our view, to circumvent the "entire contract" requirement of these rulings and to grant liens for work and materials entering into construction of sidewalks not a part of an entire contract for buildings, erections, and improvements, Feeny v.

Rothbaum, 137 S.W. 82, loc. cit. 83 [2], and it abolished no then-existing liens. They still exist by force of the original principles.

The parties are in dispute over the meaning of Cronin et al. v. Tatge, 281 Ill. 336, 118 N.E. 35. From it each argues support for his position. The Illinois court dealt there with a claim for a lien for "the paving of a street and the laying of gas and water mains and sewer connections in the street and not connected with the lot." The lien was denied on the ground that the improvement was not "connected with an improvement on the lot or tract of land." Ladue's work and materials were done and furnished for improvements on and appurtenances to the lots and under an entire contract. The only relevance of the Cronin case is that it demonstrates that the Illinois Court would have granted a lien if this case had been before it.

■ Our conclusion under the decisions discussed, particularly applying the analogy of the sidewalk rulings, is that all items in Ladue's account are lienable. The·entire purpose of the mechanic's lien law is to guarantee "effective security to mechanics and materialmen who furnish labor and materials in the making of improvements upon the property of others. Once furnished and put into the improvement, the labor and materials lose all further value to the mechanic or materialman, but enhance the value of the property to the benefit of the owner and those who may take under him. Consequently, it is only fair and just that the law should be construed as favorably as its terms will legitimately permit to the end of advancing the remedial purpose of its enactment, and so the courts do construe it in cases to which its provisions apply." Roy F. Stamm Electric Co. v. Hamilton-Brown Shoe Co., 350 Mo. 1178, 171 S.W.2d 580, 584 [9], 146 A.L.R. 917; 20A Mo.Digest, Mechanic's Liens, ■

■ Before us is a record presenting the simultaneous construction under an en-

tire contract of twelve dwellings on contiguous lots together with improvements and appurtenances consisting of Jewel Avenue and its circular turn-around, curbs and gutters for the avenue, work on sanitary sewers, and driveways from the avenue. All of the items in Ladue's account were improvements on the lots and "appurtenances" to them. The construction was "essential to the convenient and comfortable use of the premises," [114 Mo. 497, 21 S.W. 855] just as were the sidewalks and other appurtenances in the rulings above. Dugan Cut Stone Co. v. Gray, supra. It is much too late in these modern times to embrace arguments that the items in Ladue's account ought not to be treated as essential to the comfortable and convenient use of the dwellings. Research has not discovered any Missouri precedent dealing with streets as subject or not subject to the lien statutes. But dwellings without streets for ingress and egress, without driveways, or without efficient sewer systems are just no longer constructed in urban areas. To hold that the items of Ladue's account are outside the terms of the lien statute would be to turn the clock back to another century. Our construction of the lien statutes must be liberal and most favorable to Ladue, and the ruling the owners ask us to make would enforce, we think, strict construction which we are forbidden to apply.

Courts have ruled that liens for paving streets adjacent to residential lots are applicable against those lots, even when the streets are public. Lewis et al. v. Roach Manigan Paving Co., Tex.Civ.App., 184 S. W. 680, 681; Peoples v. Smith Bros., Inc., Tex.Civ.App., 65 S.W.2d 777, 778. Here the avenue, turn-around, and other improvements were constructed on private property. Liens have been granted where the entire property benefits from the paving of a plaza and laying out roads in a cemetery. Johnson v. Ocean View Cemetery, 198 App.Div. 854, 191 N.Y.S. 128, 129. Relevant rulings from other jurisdictions supporting our conclusion are collated in 36 Am.Jur., Mechanics' Liens, §§ 64, 67, pp. 54–56; 57 C.J.S. Mechanics' Liens § 31, p. 526. These authorities collate also approvals of liens on sewers and other appurtenances resembling those we have considered. Conceding that our application of the analogy of the sidewalk rulings to this avenue extends that analogy beyond the terrain sidewalks occupy, we are convinced we stretch only dimensions and not principles.

For these reasons, the judgment is reversed and the cause remanded.

ANDERSON, Acting P. J., and RUDDY, J., concur.