OPINION OF THE COURT
Gabrielli, J.
The issue on this appeal is whether plaintiff’s prior recorded mortgage for materials and labor provided for the construe *493 tion of streets, road drainage, curbs, sewer lines and gas and electric service mains in a real estate subdivision has priority over a subsequently filed mechanic’s lien.
The property in question was originally owned by Muriel White and Sherry Linder and was subdivided into 77 lots in section 3 of Harbor Trees in Kings Park, Smithtown, New York. On July 30, 1973 White and Linder contracted to sell 27 lots to plaintiff corporation, which is wholly owned by their husbands, Samuel Linder and Stanley White, and in addition contracted to sell the remaining 50 lots to defendant mortgagor, Trifort Realty. All of the parties contemplated construction of one-family residences on their lots and it was known that Smithtown would not issue certificates of occupancy until improvements for the entire tract, such as roads, curbings, drainage and sewer lines had been installed. Pursuant to contracts executed by all parties on July 30, 1973, plaintiff obligated itself to install such improvements in the streets for the entire 77 lots and Trifort obligated itself to pay 50/77ths of the cost thereof, with a ceiling of $270,000. In accord with this agreement and simultaneously with the execution of the contract to purchase the land, W. L. Development and Trifort signed a written agreement which declared that W. L. Development "is about to commence construction of all off-site public improvements within the area shown on the Map of Harbor Trees, Sec. 3, which said improvements will enure to the benefit of [Trifort] and W. L. Development” and that "the parties hereto wish to provide by written agreement for the construction and installation of said public improvements and for the payment by [Trifort] to W. L. for a proportionate share of the cost of said work.”
On January 28, 1974, pursuant to the contract of purchase, Trifort acquired title to the 50 lots and simultaneously executed a bond and mortgage to W. L. Development in the sum of $270,000 to secure payment of its share of the improvements. The mortgage was recorded on February 11, 1974. When Trifort received title to the 50 lots, its share, as of that time, of the cost of the off-site improvements which W. L. Development had already provided for Trifort’s 50 lots under the July 30, 1973 agreement, was $52,643. By February, 1975 W. L. Development’s work under the contract was substantially completed and Trifort’s maximum cost obligation had been reached.
In November, 1974 Ace Hardwood Flooring Co. began in *494 stalling hardwood flooring in the houses Trifort was building and it continued to do so until September 26, 1975. On December 3, 1975 Ace filed a mechanic’s lien for $26,107.50 against the lots, constituting the amount still owed by Trifort for work completed. Meanwhile in October, 1975 Trifort failed to make its quarterly payment to W. L. Development under the mortgage and the instant foreclosure action was instituted. The principal balance remaining on the mortgage at the time of trial was $130,950. Ace opposed the foreclosure arguing that the bond and mortgage constituted a subterfuge to avoid the mandates of the Lien Law and illegally granted plaintiff a priority over other mechanics’ lienors who should either have a priority or be on a parity with plaintiff. Ace counterclaimed for foreclosure of its mechanic’s lien, urging that the bond and mortgage are invalid as to it.
Special Term held that a mortgage may be validly given to secure future advances or future obligations (Knapp v McGowan., 96 NY 75; Truscott v King, 6 NY 147) and that a prior recorded mortgage has priority over a subsequently filed mechanic’s lien (Lien Law, § 13, subd [1]). Although section 7 of the Lien Law provides that a mortgage "made by an owner of real property, for the purpose of avoiding the provisions of this article, with the knowledge or privity of the person to whom the conveyance is made or in whose favor the mortgage * * * is created, shall be void and of no effect as against a claim on account of the improvement of such real property, existing at the time of the making of the conveyance or the creation of such mortgage” the court found that Ace’s claim was not in existence at the time the mortgage was given and thus section 7 was inapplicable. The court noted that section 7 proscribes inequitable or preferential treatment among lienors at a time when their claims are coexistent and both maker and receiver of the mortgage have knowledge of the existence of other claims and no such situation exists here.
The Appellate Division reversed the judgment, with one Justice dissenting, on the ground that a supplier of materials and labor should not be able to obtain a priority for its claim by use of a mortgage as compared to a mechanic’s lien when the Lien Law establishes a policy that all such "liens shall be on a parity” (Lien Law, § 13, subd [1]). The Appellate Division reasoned that there was no authority for the use of an "open-ended mortgage device” (58 AD2d 377, 383) to secure priority over mechanics’ lienors. Recognizing the validity of mortgages *495 used for securing future money advances, the court distinguished them on the ground that they involved money whereas the present mortgage secured payments due for future work. Viewing the recorded instrument as something other than a proper mortgage, the court argued that it was analogous to a mechanic’s lien and should be treated, for priority purposes, as if it were such a lien. Under section 13 of the Lien Law, "[p]ersons shall have no priority on account of the time of filing their respective notices of liens, but all liens shall be on a parity”. Reasoning that the mortgage sought to secure payment for improvements of the real property and that such materials and labor are lienable improvements within the meaning of the Lien Law, the court treated the mortgage as a mechanic’s lien and placed plaintiff’s interest on a parity with Ace’s lien. In so holding, however, the Appellate Division affirmed Special Term’s finding of fact that Trifort made no payments prior to the time when under the contract those payments became due, nor did it enter into the mortgage agreement with any intent of avoiding the provisions of the Lien Law. It was clearly established that the mortgage was entered into prior to any mechanics’ claims on the property. Thus, the plaintiff’s claim was not void as to Ace under section 7 of the Lien Law.
In analyzing the case before us, we must first determine whether the services performed by plaintiff are covered by the Lien Law. Section 3 of the Lien Law provides, in pertinent part, that a "contractor, subcontractor, laborer. * * * who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof * * * shall have a lien”. Subdivision 4 of section 2 defines improvements as including "the demolition, erection, alteration or repair of any structure upon, connected with, or beneath the surface of, any real property and any work done upon such property or materials furnished for its permanent improvement, and shall also include any work done or materials furnished in equipping any such structure with any chandeliers, brackets or other fixtures or apparatus for supplying gas or electric light and shall also include the drawing by any architect or engineer or surveyor, of any plans or specifications or survey, which are prepared for or used in connection with such improvement”. The question is whether the construction of streets, curbs, road drainage, sewer mains, and gas and electric service mains, constitutes an improvement of *496 the real property under the definition quoted above. It has been said that the grading and laying out of roadways and sidewalks on a tract intended ultimately to be used for building lots constitutes an improvement of the remaining property (Jensen, Mechanics’ Lien Law of State of New York [4th ed], § 17). Similarly, in Kenney v Apgar (93 NY 539, 548-549) this court has held that a sidewalk built beyond the owner’s property line on an adjoining street was nevertheless a lien-able improvement, reasoning that the property owner had a special interest affecting his property in the improvement (see, also, Johnson v Ocean View Cemetery, 198 App Div 854). To the contrary is Matter of Palumbo (225 NYS2d 98) in which the court found that repair work done at the request of a property owner on the street abutting his property did not constitute a lienable improvement since that work was viewed as benefiting the public rather than the private property. For the reasons stated below we find Palumbo unconvincing and prefer the approach adopted in Matter of Bradwood Realty v Transit Paving (43 Misc 2d 374) where it was held that a mechanic’s lien was properly filed against lots in a subdivision for improvements consisting of streets, storm and sanitary sewers, water mains and street curbings because such improvements were intended to benefit the contracting owner.
Courts in other jurisdictions have found similar construction work to give rise to mechanics’ liens (Christ Constr. Co. v Willete Assoc., 47 NJ 473; Ladue Contr. Co. v Land Dev. Co., 337 SW2d 578 [Mo]; Mitford v Prior, 353 F2d 550; 36 Am Jur, Mechanics’ Liens, § 64). There can be no dispute that the improvements provided by plaintiff are necessary to make the homes in the subdivision habitable in a manner consistent with reasonable standards of comfort and health and that they enhance the value of property. Indeed, the improvements are required before certificates of occupancy would issue. As was so aptly stated in Ladue Contr. Co. v Land Dev. Co. (337 SW2d 578, 585 [Mo], supra): "It is much too late in these modern times to embrace argument that the [streets, curbs, gutters and sanitary sewers] ought not to be treated as essential to the comfortable and convenient use of the dwellings. * * * [D]wellings without streets for ingress and egress * * * or without efficient sewer systems are just no longer constructed in urban areas. To hold that [these] items are outside the terms of the lien statute would be to turn the clock back to another century.”
*497 Our statute defines an improvement as including the "erection, alteration, or repair of any structure * * * connected with * * * any real property” (Lien Law, § 2, subd 4). Giving the statute a liberal interpretation, as we must (Lien Law, § 23), the construction work performed by plaintiff clearly constitutes an improvement. The work was not only "connected with” but necessary to the subdivision plan and the individual lots were benefited thereby.
On the record before us it is unclear whether the roadbeds upon which plaintiff’s work was performed are owned by the original grantees, or are part of each subdivided lot or have been dedicated to Smithtown. Even assuming that the roadbeds were owned by someone other than Trifort, the work still constitutes an improvement of Trifort’s land since it enhanced the value of that property and was necessary to make the homes being constructed suitable for habitation (see Kenney v Apgar, 93 NY 539, 548, supra; Christ Constr. Co. v Willete Assoc., 47 NJ 473, supra; 36 Am Jur, Mechanics’ Liens, § 64). The fact that the work may have been done on land owned by someone other than Trifort in no way alters our conclusion that, under these circumstances, the work constitutes an improvement made at the request of and under contract between Trifort and plaintiff.
Now we must turn to the issue whether a mortgage given to secure payment for future work pursuant to a written construction contract constitutes a valid mortgage. There can be no doubt as to the validity of mortgages to secure future advances or liabilities as this has become a recognized form of security frequently used in the transaction of business (Ackerman v Hunsicker, 85 NY 43, 47; Knapp v McGowan, 96 NY 75, 86, supra; 3A Warren’s Weed New York Real Property, Mortgages, § 1.05; Rasch, Real Property Law and Practice, § 1702). The Appellate Division distinguished this rule on the ground that it covers future loans and advances involving the receipt of money and not money due on account for the performance of work in the future. This distinction is far too tenuous to be established as a rule of law. The mere fact that the mortgagee provides both work and financing should not place him in a lesser position than a banker who provides financing only, which would be used to pay for work performed by another. Although the mortgagee serves both as banker and contractor this should not diminish his right to take a valid mortgage.
*498 A mortgage is the conveyance of an interest in property intended by the parties at the time of its making to be security for the payment of money or the doing of some prescribed act (Sullivan v Rosson, 223 NY 217, 224; Burnett v Wright, 135 NY 543; Trimm v Marsh, 54 NY 599; 3A Warren’s Weed New York Real Property, Mortgages, § 1.01; Rasch, Real Property Law and Practice, §§ 1681, 1682). In the present case we have such a conveyance, an agreement between the parties and an obligation to pay money in consideration for the performance of a prescribed act which was fully performed. There can be no doubt that the security interest involved in this case is indeed a valid mortgage.
 Likewise, nothing in the Lien Law itself prohibits a contractor and an owner from entering into a mortgage agreement. A mortgage being an agreement between two parties requires no specific statutory authorization to be valid as contrasted with a mechanic’s lien, which is an ex parte acquisition of an encumbrance on one’s land, and clearly needs legislative sanction to be valid. The mere availability of the mechanic’s lien provisions does not automatically preclude the use of a mortgage. Section 7 of the Lien Law provides protection against the granting of collusive mortgages used for the purpose of avoiding the provisions of that law. Where a contractor takes a mortgage when mechanics’ lienors already possess claims against the property, then it may be assumed that the mortgagee seeks to take precedence over the others and section 7 would void that mortgage as to the other lienors (Foxson v Elmus Bldg. Corp., 276 NY 30). But this provision implies that a mortgage honestly given in good faith prior to the existence of any such claims will be valid.
Both lower courts found, as a matter of fact, that the mortgage herein was given in good faith and that there was no evidence to indicate an intent to avoid the provisions of the Lien Law. When the mortgage was given there were no persons who possessed claims for providing either labor or materials for the improvement of the property. In January, 1974 when the mortgage was executed, plaintiff had already completed approximately 20% of the required work and the remainder was finished by February, 1975 at a cost in excess of the amount of the mortgage. On the other hand Ace did not commence its work until November, 1974, some nine months after the recording of the mortgage and its lien was not filed until another 13 months later. When Ace began the flooring *499 installation, it was chargeable with notice of plaintiffs mortgage just as it would be charged with notice of a prior recorded building loan mortgage. Under these circumstances and in view of the nature of the construction work performed, no reason exists to treat plaintiffs interest as anything other than a mortgage.
To treat this mortgage as a mechanic’s lien, as the Appellate Division did, would constitute an impairment of the obligations of the contract that the parties chose to make. Absent clear statutory authorization to do so, the court should not interfere with such rights. We should not read such an important power into the Lien Law absent more explicit language. Notable, again, in this context is section 7 which protects lienors from the abusive use of the mortgage, but does not prohibit the good faith use thereof.
A valid prior recorded mortgage has priority over a subsequent mechanic’s lien (Lien Law, § 13, subd [1]; Ausable Chasm Co. v Hotel Ausable Chasm & Country Club, 263 App Div 486). Since the mortgage complies with these requirements, it has priority.*
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court reinstated.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, etc.

 We note, further, in the case before us that even if the contract and mortgage were cognizable as a building loan contract (Lien Law, § 22) there would be no doubt as to priority (Lien Law, § 13, subds [2], [3]) since the mortgage complied with the statutory requirements, including the requisite lien covenant.